857 A.2d 1089

**Bruce LEVITT**

v.

**FAX.COM, INC., et al.**

**No. 21, Sept. Term, 2003.**

Court of Appeals of Maryland.

Sept. 13, 2004.

Michael C. Worsham, Forest Hill (Stephen H. Ring, Stephen H. Ring, P.C., Gaithersburg), all on brief, for Appellants.

Ronald A. Baradel (Peter F. Axelrad, Council, Baradel, Kosmerl & Nolan, P.A., Annapolis), on brief, for Appellees.

Argued before BELL, C.J., ELDRIDGE *, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

ELDRIDGE, Judge.

The broad question presented by this case is the same as the question recently decided by this Court in *R.A. Ponte Architects, Ltd. v. Investors Alert, Inc., et al.*, 382 Md. 689, 857 A.2d 1 (2004), in which we filed an opinion a few weeks ago. That question is whether Maryland trial courts are authorized to entertain a private cause of action for damages under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3). We held in *Ponte Architects* that Maryland trial courts are authorized to entertain the private cause of action created by 47 U.S.C. § 227(b)(3).

Our opinion in *Ponte Architects* disposes of all of the arguments made in the present case with one exception. The appellee in this case makes an argument which was not raised by any party in the *Ponte Architects* case and, therefore, was not considered by the Court. For this reason, we are filing a separate opinion in this case.

## I.

The basic facts of this case, taken from the parties' agreed statement of facts, are, with some minor stylistic changes, as

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

follows. The plaintiff-appellant, Bruce Levitt, is an attorney in private practice in Maryland. Mr. Levitt allegedly received unsolicited advertisements via facsimile promoting the products and services of defendant-appellee JD & T Enterprises, Inc., a California corporation. JD & T Enterprises conducts business under the name "Travel To Go," and sells travel services, which it allegedly advertised through defendant-appellee Fax.com, Inc., by sending advertisements via facsimile. Fax.com, Inc., a Delaware corporation with its principal place of business in California, is engaged in the business of sending advertisements by facsimile on behalf of others to facsimile numbers throughout the United States, including Maryland.

Levitt filed this suit as a class action under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3), in the Circuit Court for Baltimore City against JD & T Enterprises, Inc., and Fax.com, Inc. Levitt sought statutory damages of $500 per violation, or up to $1,500 for each violation found to be the result of knowing or willful conduct. The defendants filed a motion for summary judgment which was denied on November 27, 2002. Shortly thereafter, the Circuit Court filed an order granting class action status.

On January 29, 2003, however, the Court of Special Appeals filed its opinion in *R.A. Ponte Architects v. Investors' Alert*, 149 Md.App. 219, 815 A.2d 816 (2003), holding that Maryland trial courts could not entertain the federal private cause of action created by the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3).

The defendants on January 31, 2003, filed a "Renewed Motion for Summary Judgment," based upon the Court of Special Appeals' opinion in the *Ponte Architects* case. The Circuit Court granted the renewed motion on February 3, 2003, and filed an order dismissing the case. The plaintiff timely filed a notice of the appeal to the Court of Special Appeals.

This Court on May 7, 2003, granted a petition for a writ of certiorari in the *Ponte Architects* case, *Ponte v. Investors'*

*Alert,* 374 Md. 358, 822 A.2d 1224 (2003). The grant of certiorari in *Ponte Architects* prompted the defendants in the case at bar, prior to briefing and argument in the Court of Special Appeals, to file in this Court a petition for a writ of certiorari. The petition was granted, *Levitt v. Fax.Com,* 374 Md. 582, 824 A.2d 58 (2003), and this case was argued on the same day as the argument in *Ponte Architects.*

As previously indicated, the arguments by both sides in the present case are, with a single exception, the same as the arguments in *Ponte Architects.* Our recently filed opinion in *Ponte Architects* disposes of those arguments. The one argument made in this case, which was not before us in *Ponte Architects,* is the defendants' contention that Congress's creation of a private cause of action, with exclusive jurisdiction in state courts, and without a state right to "opt out" of such jurisdiction, exceeds Congress's authority under Article I, Section 8, of the United States Constitution [1] and the Tenth Amendment to the United States Constitution.[2] We shall reject this argument and reverse the judgment of the Circuit Court for Baltimore City.[3]

---

**1.** Article I, Section 8, of the United States Constitution provides in pertinent part as follows:

"The Congress shall have Power

\* \* \*

"To regulate commerce with foreign Nations, and among the several States and with the Indian Tribes; \* \* \*."

**2.** The Tenth Amendment states:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

**3.** As in the *Ponte Architects* case, an *amicus* in the present case raises an issue concerning the propriety of class actions in suits under 47 U.S.C. § 227(b)(3), but the parties do not raise the issue. Since an *amicus* may not ordinarily raise an issue which is not raised by the parties, the question of class actions is not before us. *See Ponte Architects,* 382 Md. at 694 n. 3, 857 A.2d at 3 n. 3; *Dua v. Comcast Cable,* 370 Md. 604, 642–643, 805 A.2d 1061, 1083–1084 (2002); *Eagle–Picher v. Balbos,* 326 Md. 179, 230–231 n. 15, 604 A.2d 445, 470 n. 15 (1992); *Maryland–National Capital Park & Planning Comm'n v. Crawford,* 307 Md. 1, 15 n. 6, 511 A.2d 1079, 1086 n. 6 (1986). With regard

## II.

### A.

The defendants' argument, that the federal cause of action created by the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3), is unconstitutional, begins with the premise that state trial courts have exclusive jurisdiction over that cause of action. Several United States Courts of Appeal have taken the position that state courts have exclusive jurisdiction over the private causes of action created by 47 U.S.C. §§ 227(b)(3) and 227(c)(5), and that federal district courts may not entertain such actions. *See Murphey v. Lanier,* 204 F.3d 911, 914–915 (9th Cir.2000); *Erienet, Inc. v. Velocity Net, Inc.,* 156 F.3d 513 (3d Cir.1998); *Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd.,* 156 F.3d 432, 438 (2d Cir.1998); *Nicholson v. Hooters of Augusta, Inc.,* 136 F.3d 1287, 1289, modified 140 F.3d 898 (11th Cir.1998); *Chair King, Inc. v. Houston Cellular Corp.,* 131 F.3d 507, 510 (5th Cir. 1997); *International Science & Technology Institute v. Inacom Communications,* 106 F.3d 1146 (4th Cir.1997). These appellate opinions, however, dealt with the jurisdiction conferred by the federal Telephone Consumer Protection Act or with general federal question jurisdiction. They did not consider or discuss the possibility of federal court jurisdiction based upon diversity of citizenship. Nonetheless, the broad "no federal jurisdiction" and "exclusive state court jurisdiction" language of these opinions may indicate a view that there is no federal court jurisdiction on any basis.

The plaintiff in the case at bar, relying upon some federal district court opinions, disagrees with the state court exclusive jurisdiction premise. *See Kopff v. World Research Group,* 298 F.Supp.2d 50 (D.D.C.2003) (Federal district courts have diversity jurisdiction over private actions under the Telephone Consumer Protection Act); *Accounting Outsourcing, LLC v.*

---

to class actions generally under Maryland Procedure, *see* Maryland Rule 2–231; *Creveling v. GEICO,* 376 Md. 72, 828 A.2d 229 (2003); *Philip Morris v. Angeletti,* 358 Md. 689, 752 A.2d 200 (2000).

*Verizon Wireless Personal Communications,* 294 F.Supp.2d 834 (M.D.La.2003) (same); *Kinder v. Citibank,* 2000 WL 1409762 (S.D.Cal.2000) (same). *See also Bank of the United States v. Deveaux,* 5 Cranch 61, 3 L.Ed. 38 (1809) (Although the right to bring the action was based on a federal statute, the Court, in an opinion by Chief Justice Marshall, held that the federal circuit court lacked federal question jurisdiction but had jurisdiction based on diversity of citizenship). In addition, the United States District Court for the Southern District of Indiana has held that federal district courts have concurrent federal question jurisdiction over private actions under the Telephone Consumer Protection Act, *Kenro, Inc. v. Fax Daily, Inc.,* 904 F.Supp. 912 (S.D.Ind.1995), on motion for reconsideration, 962 F.Supp. 1162 (S.D.Ind.1997).

The Supreme Court of the United States does not appear to have addressed the issue of whether state courts have exclusive jurisdiction over the private federal causes of action created by the Telephone Consumer Protection Act. We shall, for purposes of this case, accept the defendants' exclusive jurisdiction premise and assume, *arguendo,* that private actions under the Telephone Consumer Protection Act may be brought only in state courts.

## B.

In arguing that Congress may not constitutionally create federal causes of action with exclusive jurisdiction in state courts, without a state right to "opt out," the defendants draw a sharp distinction between concurrent state court jurisdiction over federal causes of action and exclusive state court jurisdiction over federal causes of action. They concede that Congress may constitutionally confer concurrent jurisdiction on state courts over federal causes of action and that, when Congress does so, state law may not "opt out" or discriminate against the federal causes of action.[4] The defendants contend,

---

4. The defendants' argument is as follows (defendants' brief at 8–9, emphasis in original, footnote omitted):

however, that when Congress confers exclusive jurisdiction on state courts, without authorization to discriminate against the federal cause of action, Congress acts unconstitutionally because it "runs the serious risk of commandeering state resources and violating a state's right to determine how its resources will be utilized," (defendants' brief at 12).

The defendants do not explain how required state court exclusive jurisdiction violates "a state's right to determine how its resources will be utilized," whereas required state court concurrent jurisdiction does not violate this "right." In either situation, a state's judicial resources will be utilized with no ability on the part of a state to prohibit its courts from entertaining the federal causes of action. In fact, certain types of concurrent state court jurisdiction over federal causes of action (*i.e.,* claims under 42 U.S.C. § 1983) might result in much more state court litigation than certain types of exclusive state court jurisdiction over federal claims. Exclusive state court jurisdiction over civil causes of action under federal law may have been common during the first one hundred years following the American Revolution, but it is rare today.

---

"All of the decisions cited by [plaintiff] in support of his argument that states are required (indeed, compelled) by the Supremacy Clause to hear private causes of action under the TCPA involve instances where *concurrent jurisdiction* between the federal and state courts existed. None involved federal statutes that purported to confer *exclusive jurisdiction* on the state courts, such as the TCPA. On that basis alone, the cases are distinguishable.

"Clearly, pursuant to the Supremacy Clause, the laws of the United States represent the 'supreme law of the land,' and state court judges are bound by the provisions of federal law. Where concurrent jurisdiction exists under a statute, state courts simply cannot 'discriminate' against federal law and decline to enforce it, while enforcing similar state laws. *Howlett v. Rose,* 496 U.S. 356, 375, 110 S.Ct. 2430, 2442, 110 L.Ed.2d 332 (1990) ('the Florida court's refusal to entertain one discrete category of § 1983 claims, when the court entertains similar state-law actions against state defendants, violates the Supremacy Clause'); *Testa v. Katt,* 330 U.S. 386, 394, 67 S.Ct. 810, 814–815, 91 L.Ed. 967 (1947) ('It is conceded that this same type of claim arising under Rhode Island law would be enforced by that State's courts. * * * Under these circumstances the State courts are not free to refuse enforcement of petitioners' claim.'); *see also, McKnett v. St. Louis & San Francisco R. Co.,* 292 U.S. 230, 234, 54 S.Ct. 690, 692, 78 L.Ed. 1227 (1934)."

Today, most state court jurisdiction over federal claims is concurrent with federal district court jurisdiction. In light of this, it is difficult to accept an argument that exclusive state court jurisdiction over federal claims imposes an unconstitutional burden upon state judicial resources, whereas concurrent jurisdiction over federal claims does not.

Moreover, the defendants' position cannot be reconciled with American history. As often pointed out, the United States Constitution established only one federal court, the Supreme Court of the United States, and its jurisdiction is almost entirely appellate. The creation of "inferior" federal courts was optional with Congress.[5] *See Printz v. United States,* 521 U.S. 898, 907, 117 S.Ct. 2365, 2371, 138 L.Ed.2d 914 (1997); Charles Warren, *The Making of the Constitution* 325–327 (1928).[6] If Congress had chosen the constitutional

---

5. Article III, Section 1 and Section 2, clause 2, of the United States Constitution provide in pertinent part as follows:

"The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. * * *
* * *
"In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction. In all other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make."

6. With regard to the Constitutional Convention proceedings in July 1787, Warren explains (at 325–327):

"The proposal for one Supreme Tribunal had been accepted without debate, on June 4; but the proposal that there should be inferior tribunals had occasioned some controversy. Rutledge of South Carolina, on June 5, had argued that 'the State tribunals might and ought to be left in all cases to decide in the first instance, the right of appeal to the Supreme National Tribunal being sufficient to secure the National rights and uniformity of judgments' and that any other provision would make 'an unnecessary encroachment on the jurisdiction of the States and create unnecessary obstacles to their adoption of the new system.' Butler of South Carolina had stated that: 'The people will not bear such innovations. The States will revolt at such encroachments."
* * *

option of not creating federal trial courts, jurisdiction over virtually all federal causes of action would have been exclusively in state trial courts.

Furthermore, even though Congress did choose to create federal trial courts, it did not vest them with general federal question jurisdiction until 1875. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 807, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650, 658 (1986) ("[I]t was not until the Judiciary Act of 1875 that Congress gave the federal courts general federal-question jurisdiction"). Prior to 1875, general federal question jurisdiction was exclusively in state trial courts. This history is flatly inconsistent with the contention that Congress may not impose upon state courts the obligation to exercise exclusive jurisdiction over federal claims.

The defendants, in arguing that exclusive required jurisdiction in state courts over federal claims is unconstitutional, rely

---

"Sherman of Connecticut, agreeing with Rutledge and Butler, had deplored an expensive new system of Courts when the existing State Courts would answer the same purpose. In reply to Rutledge, Madison had pointed out unless there should be National inferior tribunals 'dispersed throughout the Republic, with final jurisdiction in many cases, appeals would be multiplied to a most oppressive degree.' He contended that such tribunals would be necessary to counteract local State prejudices, and that 'an effective Judiciary establishment commensurate to the Legislative authority was essential.' King, Wilson, and Dickinson had concurred with him. Finally, the matter had been compromised, on motion of Madison and Wilson, by providing that 'the National Legislature be empowered to institute inferior tribunals', thus leaving it to the discretion of the Legislature to say whether or not any such tribunals should be constituted; and thus it came about that the National inferior Courts are now established by Congress and not by the Constitution itself. When this proposal of the Committee of the Whole was considered by the Convention, on this July 18, it again met with opposition. Butler said that 'he could see no necessity for such tribunals, since the State tribunals might do the business.' Luther Martin said that 'they will create jealousies and oppositions in the State tribunals, with the jurisdiction of which they will interfere.'

\* \* \*

"Sherman was willing to leave the matter to the National Legislature, but he 'wished them to make use of the State tribunals whenever it could be done, with safety to the general interest.' The Convention then adopted the Committee's proposal, with no State dissenting."

upon *Printz v. United States, supra,* 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914, and *New York v. United States,* 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). Those cases, however, involved congressional impositions upon the executive and legislative branches of state government, and not upon the judiciary. This important distinction was made by the Supreme Court in the *Printz* case as follows (521 U.S. at 907–908, 117 S.Ct. at 2371, 138 L.Ed.2d at 927, emphasis in original):

"These early laws [relied on by the Government] establish, at most, that the Constitution was originally understood to permit imposition of an obligation on state *judges* to enforce federal prescriptions, insofar as those prescriptions related to matters appropriate for the judicial power. That assumption was perhaps implicit in one of the provisions of the Constitution, and was explicit in another. In accord with the so-called Madisonian Compromise, Article III, § 1, established only a Supreme Court, and made the creation of lower federal courts optional with the Congress—even though it was obvious that the Supreme Court alone could not hear all federal cases throughout the United States. See C. Warren, The Making of the Constitution 325–327 (1928). And the Supremacy Clause, Art. VI, cl. 2, announced that 'the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby.' It is understandable why courts should have been viewed distinctively in this regard; unlike legislatures and executives, they applied the law of other sovereigns all the time. The principle underlying so-called 'transitory' causes of action was that laws which operated elsewhere created obligations in justice that courts of the forum State would enforce. See, *e.g., McKenna v. Fisk,* [42 U.S.] 1 How. 241, 247–249, 11 L.Ed. 117 (1843). The Constitution itself, in the Full Faith and Credit Clause, Art. IV, § 1, generally required such enforcement with respect to obligations arising in other States. See *Hughes v. Fetter,* 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 1212 (1951).

"For these reasons, we do not think the early statutes imposing obligations on state courts imply a power of congress to impress the state executive into its service. Indeed, it can be argued that the numerousness of these statutes, contrasted with the utter lack of statutes imposing obligations on the States' executive (notwithstanding the attractiveness of that course to Congress), suggests and assume *absence* of such power."

In sum, 47 U.S.C. § 227(b)(3), to the extent that it confers upon appropriate state courts exclusive required jurisdiction to entertain a federal cause of action, does not violate Article I and the Tenth Amendment of the United States Constitution.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED AND CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION AND THE OPINION IN R.A. PONTE ARCHITECTS, LTD. v. INVESTORS' ALERT, INC. COSTS TO BE PAID BY THE DEFENDANTS–APPELLEES.*