■ PETER MARC STERN, Respondent, v ANDREW LAVOOTT BLUESTONE, Appellant. [850 NYS2d 90]—

Order, Supreme Court, New York County (Jane S. Solomon, J.), entered August 25, 2006, which insofar as appealed from as limited by the briefs, granted plaintiff's motion for partial summary judgment as to liability on his cause of action pursuant to the Telephone Consumer Protection Act of 1991 (TCPA) (47 USC § 227) and dismissed defendant's second affirmative defense, affirmed, without costs.

Peter Marc Stern, a solo practitioner engaged in the practice of law in New York, alleged that between November 25, 2003

and March 29, 2005, he received 14 faxes from the defendant Andrew Lavoott Bluestone on a fax machine he owns. Seven of the faxes were addressed to Stern, and the other seven were addressed to a subtenant of Stern who shared the same fax machine with Stern. The subtenant, however, moved to an office in Nyack, New York approximately four years before the faxes were sent, and he is not a party to this action.

The faxes are entitled "Attorney Malpractice Report" and subtitled "Free Monthly report on Attorney Malpractice From the Law Office of Andrew Lavoott Bluestone." Bluestone authored the faxes, and his legal practice consists primarily of representing plaintiffs in attorney malpractice claims.

Each "Attorney Malpractice Report" consists of a one-page essay on legal malpractice containing information regarding issues and trends in that area. The faxes include generic statements about the elements of professional malpractice; the most common causes of attorney malpractice litigation; and brief discussions of situations that have given rise to attorney malpractice cases. At the bottom of each fax is a box containing Bluestone's contact information, office address, telephone number, fax number and Web site address. Another Web site address appears at the top of the faxes. In seven of the faxes, the box also contains a telephone number to call in order to be removed "from this list." Six of the faxes contain the notation: "This is not an advertisement of the availability of services." Two of the faxes state that the report is "[p]resented as an [e]ducational document by the [l]aw offices of Andrew Lavoott Bluestone." Bluestone obtained Stern's fax number from the New York Lawyers Diary and Manual.

Stern's complaint contains two causes of actions. The first cause of action seeks monetary damages of $500 for each fax sent, for a total of $7,000, as well as treble damages for Bluestone's willful and knowing violation of the TCPA, for a total of $21,000. The second cause of action seeks injunctive relief as provided by the TCPA.

Bluestone served an answer denying the material allegations of the complaint and asserting five affirmative defenses: the complaint fails to state a cause of action; the action is barred by the statute of limitations; unclean hands; laches; and the TCPA as applied in this case is unconstitutional.*

Insofar as it is relevant to the issue of treble damages,

---

* Bluestone does not raise any arguments on appeal concerning the court's dismissal of his affirmative defenses of unclean hands and laches. Thus, he has abandoned those claims.

Bluestone was served with a similar complaint for violation of the TCPA in 2003, by an unrelated attorney named Antollino. In that case before the same court and Justice, summary judgment was granted in favor of Antollino, with the court explicitly rejecting Bluestone's claim that the faxes were purely informational and did not explicitly offer services, finding that they constituted prohibited advertisements (*Antollino v LaSalle Servs., Inc.*, 2004 NY Slip Op 30201[U] [Sup Ct, NY County 2004]). The faxes involved in *Antollino*, are virtually identical to those involved in the instant case except for the fact that in the box at the bottom in the *Antollino* faxes, it stated "Presented by the Law offices of Andrew Lavoott Bluestone, concentrating in Attorney Malpractice Litigation . . . Inquiries are welcome." In the faxes at issue here, the phrases "concentrating in Attorney Malpractice Litigation" and "Inquiries are welcome" have been deleted.

In the instant case, Stern moved for summary judgment as to liability on his first cause of action for money damages and requested a finding that, as a matter of law, Bluestone willfully and knowingly violated the TCPA. In addition, Stern sought summary judgment on his second cause of action for injunctive relief, and dismissal of Bluestone's affirmative defenses. In his affidavit in support of the motion, Stern asserted that he never authorized Bluestone to transmit the faxes to him, or to anyone in his office; he never had a business relationship with Bluestone; and he had never heard of Bluestone until he began receiving the faxes.

An affidavit in support of the motion was also submitted by Stern's secretary, stating, inter alia, that she never authorized Bluestone to send faxes to Stern's office; and that she never had a business relationship with Bluestone.

Stern's former subtenant also submitted an affidavit stating that he shared a fax machine and office space with Stern until 1999 when he moved into his office in Nyack. The subtenant stated that he never authorized or gave Bluestone permission to transmit faxes to Stern or to anyone else; he stated that he had never heard of or had a business relationship with Bluestone; and he did not own the telephone line or fax machine upon which Stern received the faxes.

In opposition to Stern's motion, Bluestone asserted, inter alia, that as an attorney whose practice is primarily concerned with the representation of individuals who have been harmed by legal malpractice, and who does not defend attorneys who are accused of committing legal malpractice, the Attorney Malpractice Report is not a solicitation for his services. Bluestone

averred that while he is not opposed to referrals from other attorneys and does enjoy the enhancement of his reputation that comes from being the author of the Report, it was never intended to be an advertisement and it is not an advertisement.

In further opposition to Stern's motion, Bluestone argued, inter alia, that the Attorney Malpractice Report, is a fully protected noncommercial exercise of Bluestone's First Amendment right of free speech; that Bluestone, in response to the court's decision in *Antollino*, removed the offending language, i.e. "Inquiries are welcome," from his faxes; and accordingly, if the court does not hold as a matter of law that the Attorney Malpractice Report does not fall within the language of the TCPA, then at worst, it presents a question of fact for a jury to determine whether it is an exercise of First Amendment rights or an advertisement.

Bluestone further argued that Stern's complaint should be dismissed for failure to state a cause of action because, among other things, seven of the faxes were not sent to Stern, and Stern has no right to sue on his former subtenant's behalf. Bluestone also claimed that the applicable statute of limitations in this case is one year pursuant to CPLR 215 (4), and therefore only six of the faxes fall within the one-year period, and only three were sent to Stern.

The motion court found that Bluestone's faxes were prohibited advertisements within the meaning of the TCPA and granted partial summary judgment to Stern as to liability. It also found that because Bluestone had been sued previously for violating the same statute he was undoubtedly aware of the TCPA's proscriptions and should have known that his conduct violated the statute. Thus, it found as a matter of law that Bluestone willfully and knowingly violated the TCPA. The court dismissed all of Bluestone's affirmative defenses.

The TCPA prohibits unsolicited faxes that have the effect and purpose of advertising services, directly or indirectly (*Rudgayzer & Gratt v Enine, Inc.*, 4 Misc 3d 4 [App Term 2004]). In enacting the TCPA, Congress aimed to prevent cost-shifting to unwilling fax recipients and their deprivation of fax machine use (*id.* at 8). The relevant statute, TCPA (47 USC) § 227 (b) (1) (C), provides in its pertinent part:

"It shall be unlawful for any person within the United States . . .

"(C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless—

"(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

580

"(ii) the sender obtained the number of the telephone facsimile machine through—

"(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

"(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, . . . and

"(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2) (D)." The covered material is that which "advertis[es] the commercial availability or quality of any . . . service[ ]." (47 USC § 227 [a] [5].)

47 USC § 227 (b) (3) authorizes a private right of action in state court to enjoin violation of the TCPA and to recover for actual monetary loss from such violation, and/or to receive $500 in damages for each such violation, whichever is greater. If the court finds that a defendant willfully or knowingly violated the TCPA, it may, in its discretion, award treble damages.

As a threshold matter, Bluestone is liable to Stern for the faxes he sent to the former subtenant on Stern's fax machine. Otherwise, a fax sender could easily avoid the purpose of the TCPA by putting an incorrect name on the addressee portion of the fax.

Further, all 14 of the faxes sent by Bluestone to Stern constituted unsolicited advertisements. While Bluestone contends that his faxes were purely informational and do not explicitly offer services, his position defies common sense. The faxes at issue certainly have the purpose and effect of influencing recipients to procure Bluestone's services, which are for the specialized field of legal malpractice claims. First, the faxes include the name of Bluestone's law firm and contact information. Second, while the faxes do not directly offer Bluestone's services as a legal malpractice attorney, they indirectly advertise the commercial availability and quality of such services. Not only do the faxes invite contact for further information but they also list two Web sites that boast Bluestone's specialization in attorney malpractice suits. Thus, it is clear that the faxes indirectly proposed a commercial transaction and had the effect of influencing recipients to procure Bluestone's services. Contrary to the dissent's viewpoint, Bluestone's motive is not a factor in the determination that these faxes are advertisements. It is not necessary to probe that deeply, since simply looking at the faxes in the context in which they were sent is sufficient to establish them to be advertisements. The faxed "commentaries" are not just information with an author's name attached, but

include the name of the author's law firm and direct readers to his Web sites which advertise his professional services. By merely stating on the faxes that they are not advertisements of the availability of services does not make it so, nor should it allow Bluestone to evade the prohibitions of the TCPA (*see Rudgayzer & Gratt v Enine, Inc.*, 4 Misc 3d at 7 [finding that a fax mentioning the defendant's company name and contact information that pitches a service under the guise of providing information about it is an advertisement within the meaning of the TCPA]). Moreover, Bluestone's professional role as an attorney specializing in legal malpractice claims supports the conclusion that the faxes advertise his services (*id*. at 8 [finding that the sender's identity, motives, purposes, and intentions are relevant to whether the fax was merely "information" or "advertising"]).

Stern's affidavits establish that the faxes were sent to his fax machine without prior written permission as required by the TCPA and Bluestone also concedes that he sent them. Furthermore, Bluestone was served with a similar complaint for violation of the TCPA in 2003, leading to summary judgment against him in 2004 (*Antollino v LaSalle Servs., Inc.*, 2004 NY Slip Op 30201[U], *supra*). As such, the motion court properly awarded plaintiff partial summary judgment on the issue of liability since Bluestone was aware of the TCPA's proscription and should have known that his conduct violated the statute.

Moreover, the motion court properly awarded treble damages. The TCPA permits treble damages for a willful or knowing violation of the statute (47 USC § 227 [b] [3]). A "willful or knowing" violation of the TCPA requires only that the sender have reason to know, or should have known that his conduct would violate the statute (*id.*; *see generally Texas v American Blastfax, Inc.*, 164 F Supp 2d 892 [2001]). Bad faith is not required to award treble damages (*id*. at 899). Since Bluestone was served with a summons and complaint for possible violations of the TCPA on September 22, 2003 in the *Antollino* case, he was fully aware of the TCPA's proscriptions, yet he sent similar faxes to Stern beginning November 25, 2003 even though at that point he knew or should have known that his conduct would violate the statute (*cf. Kaplan v First City Mtge.*, 183 Misc 2d 24 [1999] [a telephone solicitor's violation of the TCPA was not willful and knowing, so that imposition of treble damages was not warranted, where the solicitor was not aware of statutory restrictions concerning telemarketing, and had innocently violated the statute]). Moreover, in light of the fact that Bluestone was found liable in *Antollino* in May 2004, but continued to send similar

faxes through March 2005, there is no question that he acted in willful or knowing disregard of the statute. Accordingly, treble damages are an appropriate sanction.

In his second affirmative defense, Bluestone states that the action is barred by the expiration of the statute of limitations. The TCPA does not have an express statute of limitations; it authorizes a private right of action "if otherwise permitted by the laws or rules of court of a State." (47 USC § 227 [b] [3].) Bluestone contends that the present action falls under the category of "an action to enforce a penalty or forfeiture created by statute" under CPLR 215 (4) requiring a one-year statute of limitations. Bluestone points to the TCPA's treble damages provision as support that TCPA creates a penalty.

Stern asserts on the other hand that actions under the TCPA are governed by 28 USC § 1658 (a), which provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of [28 USC § 1658]" has a four-year statute of limitations. This has been interpreted to provide a cause of action created by a federal statute enacted after December 1, 1990 with a four-year statute of limitations, unless otherwise specified (*Jones v R. R. Donnelley & Sons Co.*, 541 US 369 [2004]).

Given the TCPA's lack of an express limitations period and the inherent uncertainty in selecting an analogous state statute of limitations, 28 USC § 1658's four-year statute of limitations is appropriate for TCPA actions, and therefore Stern's motion seeking dismissal of Bluestone's statute of limitations defense was correctly granted. Concur—Marlow, Williams and Catterson, JJ.

Mazzarelli, J.P, and Kavanagh, J., dissent in a memorandum by Kavanagh, J., as follows: Where I part company with the majority is not over whether these faxes are advertisements—they may well be. I simply cannot agree that on this record that fact has been established by plaintiff as a matter of law entitling him to summary judgment. This is especially true where the content of each fax is almost totally devoted to a commentary on issues involving attorney malpractice and not one contains a single word that can be fairly read as promoting the author's law practice or inviting the recipient to employ his legal services.

Defendant appeals from an order finding him liable under the Telephone Consumer Protection Act of 1991 (TCPA) (47 USC § 227) for transmitting to plaintiff by fax machine 14 unsolicited messages that were in effect found to be advertisements for his legal services. The principal issue raised in this proceeding is

whether these faxes are in fact advertisements for defendant's law practice, or simply commentaries distributed by him to practicing attorneys on issues involving legal malpractice.

The TCPA provides in relevant part that subject to certain enumerated exceptions, it is unlawful for any person in the United States to send an unsolicited advertisement to another person's fax machine (47 USC § 227 [b] [1] [C]).[1] An unsolicited advertisement is defined as: "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise" (47 USC § 227 [a] [5]).[2]

Defendant concedes that he sent the faxes at issue to a fax machine number he obtained from the New York Lawyers Diary and Manual and that each of them was unsolicited.[3] However, he contends that they are not advertisements for his law practice, but instead commentaries that "express his thoughts and opinions on a subject of great public concern, attorney error and incompetence." Plaintiff concedes that there is no direct solicitation in the message that either constitutes an offer of defendant's legal services or a comment on them, but argues that defendant's occupation and the nature of his practice (prosecuting other attorneys for legal malpractice) defines the true purpose behind these faxes and has the effect of transforming what would otherwise be noncommercial speech fully protected by the First Amendment of the US Constitution to unsolicited advertisements barred from fax transmission by the TCPA.

There are a total of 14 faxes at issue; each is one page and bears the heading "Attorney Malpractice Report."[4] Each is largely devoted to a discussion of some issue involving attorney malpractice and they are titled: "Termination and Attorney's Fees"; "What are the elements of Professional Malpractice"; "Liens in New York"; "Unexpected Circumstances"; "What is

---

1. The stated purpose of this statute was to reduce the number of unsolicited advertisements sent to consumers by fax because such activity not only interfered with the consumer's use of their fax machine, but also shifted the cost of them for the promotion of such advertisements (*Missouri ex rel. Nixon v American Blast Fax, Inc.*, 323 F3d 649 [2003], *cert denied* 540 US 1104 [2004]).

2. New York has a similar albeit less restrictive provision that seeks to limit this type of activity (General Business Law § 396-aa).

3. The TCPA does not prohibit unsolicited advertisements being sent to fax numbers that had been voluntarily listed in a public directory for public distribution (47 USC § 227 [b] [1] [C] [ii]). Defendant has not argued that this provision has any application to this proceeding on this appeal.

4. While there are 14 in total, seven are actually duplicates.

Professional Malpractice"; and finally, "The most common causes of attorney malpractice litigation." Each fax identifies defendant as its author and lists his law office address, phone and fax number and two Web site addresses. Seven faxes contain a telephone number to be called if the recipient wants to be removed from the list, six carry a disclaimer which reads "This is not an advertisement of the availability of services" and two describe the report as one "Presented as an Educational document by the Law offices of Andrew Lavoott Bluestone." Each is almost entirely devoted to defendant's commentary on substantive and procedural law as it relates to legal malpractice, and there is a complete absence of any wording that invites the recipient to enter into any commercial activity with defendant or purchase his services.[5] But for the contact information, none of which is written so as to expressly invite an inquiry of any kind, each fax is informational by its express terms and cannot be fairly read as an advertisement of a commercial activity or the promotion of a legal service.

What plaintiff argues is not that the faxes as written contain such a direct solicitation of goods or services, but instead that the faxes to be fully understood must be read in the context of defendant's occupational specialty—the prosecution of attorney malpractice actions—and that by including the name of his law firm, its Web sites and other contact information, each fax indirectly proposes to the recipient a commercial transaction with defendant (see *Rudgayzer & Gratt v Enine, Inc.*, 4 Misc 3d 4 [App Term, 2d Dept 2004]). In effect, he argues that the connection between defendant's law firm and the content of these communications transforms them into nothing more than an advertisement for his law office and his legal services. Such a broad interpretation has the effect of focusing the prohibitions contained in this statute not on the content of the material transmitted, but instead on the ascribed motives of the sender and carries with it an enhanced risk that this statute will be applied to ban what is otherwise fully protected speech under the First Amendment.

The TCPA's constitutionality is grounded in its limitation to commercial speech (*Central Hudson Gas & Elec. Corp. v Public Serv. Comm'n of N. Y.*, 447 US 557, 562-563 [1980]). It cannot be used to ban noncommercial speech—and by its terms does not seek to do so. Keeping with that commitment, it should not

---

5. In a prior proceeding, faxes sent by defendant contain wording identifying his law office as "Concentrating in Attorney Malpractice Litigation" and invite contact by stating "Inquiries are Welcome." This wording or any equivalent phrasing is not present in these faxes.

be read to ban what is otherwise noncommercial speech simply because under the circumstances presented it could be argued that the transmission in question may have some commercial value to the sender. There can be no doubt that fully protected free speech can also contain some element of self-promotion (*see generally Bigelow v Virginia,* 421 US 809, 818 [1975]; *Ginzburg v United States,* 383 US 463, 474 [1966]; *Thornhill v Alabama,* 310 US 88 [1940]), and the mere existence of such a reality does not serve to convert such speech into a solicitation which may be banned by this statute.

Commercial speech is that which "does no more than propose a commercial transaction" (*Bolger v Youngs Drug Products Corp.,* 463 US 60, 66 [1983] [citations and internal quotation marks omitted]). The faxes sent by defendant to plaintiff seek to speak to legal issues involving attorney malpractice; not once by its terms does it propose a commercial transaction of any kind. The fact that its author is a lawyer who specializes in this field does not have the effect of converting what would otherwise be fully protected speech under the Constitution to an advertisement that promotes the availability of the sender's services. Without a doubt, there may well be an incidental commercial benefit to defendant from the publication of these pieces—and that fact is obviously relevant in determining if under all of the circumstances the material in question is an advertisement as opposed to a noncommercial publication. However, this is a question that cannot be resolved as a matter of law on the facts as presented.

In effect, the finding of the majority is that the character of these transmissions will not necessarily be determined by their content, but by the motive of the parties sending them. It is difficult to see how on this record such a determination can be made as a matter of law. Defendant says that these faxes are not advertisements, but represent his "commentary on the state of the legal profession, and how we, as attorneys, can perform our functions better for our clients." Given this sworn assertion and the content of these faxes, at the very least, a question exists as to whether they are in fact advertisements.

In addition, the publication by defendant of similar faxes that were the subject of a prior proceeding ought to be considered in any determination that defendant has willfully violated this statute. His attempt to fashion a fax that addressed criticisms raised in that proceeding certainly is evidence of his effort to comply with this law and raises factual issues that are incompatible with the grant of summary judgment.

For all of the reasons previously stated, it is respectfully

submitted that plaintiff's motion for a summary judgment must be in all respects denied.