981 A.2d 24

**Paul F. WORSHAM**

v.

**FAIRFIELD RESORTS, INC.**

**No. 1058, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Sept. 30, 2009.

Michael C. Worsham, Forest Hill, for Appellant.

Scott McIntosh, Washington, DC (John J. Dwyer, Reston, VA, DLA Piper US LLP on brief), for Appellee.

Panel: HOLLANDER, MEREDITH, and RAYMOND G. THIEME, JR. (Retired, specially assigned), JJ.

MEREDITH, J.

The question presented by this appeal is whether the applicable statute of limitations for a claim filed in Maryland pursuant to the federal Telephone Consumer Protection Act of 1991 ("TCPA") is four years—based upon the federal "catch all" limitation period set forth in 28 U.S.C. § 1658(a)—or three years—based upon the Maryland general civil limitation period set forth in Maryland Code (1974, 2006 Repl.Vol.), Courts and Judicial Proceedings Article ("CJP"), § 5–101. We conclude that the four year limitation period imposed by 28 U.S.C. § 1658(a) applies to the present action.

### Facts and Procedural History

The appellant in this case is Paul Worsham. On February 26, 2007, Worsham filed a complaint in the Circuit Court for Montgomery County, alleging that he had received a telephone solicitor's call that violated the federal TCPA. Worsham alleged that a company using telemarketing to promote its services—Fairfield Resorts, Inc., appellee—had unlawfully called Worsham's residential telephone number on February 28, 2003, using automated dialing equipment. Worsham's

complaint further alleged that the telemarketer delivered a prerecorded solicitation that failed to provide the true name of the individual caller and other required information. Worsham asserted that he did not give Fairfield his consent to receive such telephone calls.

The content of the prerecorded message was:

Page with the Fairfield Resorts in Alexandria, Virginia. We're inviting people in your area to the open house of our luxurious resort, and just for taking a short 90 minute tour, you'll receive a certificate good for four hotel getaways, including dinner, and spending money. For more details, call our representatives at 1–800–249–0214, and please mention offer 300. Thanks.

Worsham's complaint alleged that the call violated the provision of the TCPA set forth in 47 U.S.C. § 227(b)(1)(B), prohibiting, in Worsham's words, the initiation of "any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." Further, Worsham alleged that the message violated 47 C.F.R. § 64.1200(e)(2)(iv) by failing to provide the name of the individual caller, the name of the person on whose behalf the call was being made, and the telephone number or address at which the responsible party could be contacted. Pursuant to 47 U.S.C. § 227(b)(3), Worsham claimed damages of $500 for each violation of the TCPA, which he asked to be trebled because the violations were committed willfully or knowingly. Worsham also sought:

[a]n injunction prohibiting the Defendants … from initiating telephone calls to any residential line using a prerecorded voice to deliver a message without the prior express invitation, permission or consent of the called party, or without providing the name of the individual caller, the name of the person on whose behalf the call is being made, and/or a telephone number or address at which the person or entity may be contacted.

Fairfield filed a motion to dismiss the complaint pursuant to Maryland Rule 2—322(b)(2). Fairfield asserted that all claims

were barred by the three-year statute of limitations set forth in CJP § 5–101. Fairfield also asserted that the TCPA provided no private cause of action for the alleged violation of 47 C.F.R. § 64.1200(e)(2)(iv) because that regulation was promulgated pursuant to 47 U.S.C. § 227(d), and that section of the TCPA does not provide for a private cause of action to redress violations. *Cf. Worsham v. Ehrlich,* 181 Md.App. 711, 729, 957 A.2d 161 (2008) (concluding that 47 U.S.C. § 227(d) "does not provide for a private right of action").

Worsham responded and argued that the suit was timely filed, asserting:

> The statute of limitations for violations of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 is governed by the four year limitations period established by 28 U.S.C. § 1658. Unless specified otherwise, when a cause of action is created by a federal statute enacted after December 1, 1990, the limitations period is four years. *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004).

After a hearing, the circuit court granted Fairfield's motion to dismiss the claims against it with prejudice "on the grounds that such claims are barred by the statute of limitations." This appeal followed.[1]

## Analysis

Because the sole basis upon which the circuit court dismissed Worsham's claims was the application of the Mary-

---

**1.** Although Worsham's complaint also named as a defendant Milton James Olmos, who was alleged to be the president of Tele–Max Marketing, Inc., "a now-bankrupt company," that defendant was never served. As a consequence, the grant of Fairfield's motion disposed of all claims against all parties who had been served, and was appealable. *Turner v. Kight,* 406 Md. 167, 172 n. 3, 957 A.2d 984, (2008) ("'[A] 'named defendant who has not been served is not a party for the purpose of determining a final judgment' and . . ., if the judgment entered by the court disposes of all claims against all persons over whom the court has acquired jurisdiction, the judgment is final without a certification under Rule 2–602(b)." quoting *State Highway Admin. v. Kee,* 309 Md. 523, 529, 525 A.2d 637 (1987)).

land statute of limitations, we shall limit our discussion to whether the court correctly determined that the four-year statute of limitations established by 28 U.S.C. § 1658(a) is not applicable to private actions filed pursuant to 47 U.S.C. § 227(b)(3). The most pertinent provisions of the TCPA are 47 U.S.C. § 227(b)(1)(B), prohibiting calls to a residential telephone line by use of any prerecorded voice, and 47 U.S.C. § 227(b)(3), providing for a private cause of action for a violation of 47 U.S.C. § 227(b).

The first, 47 U.S.C. § 227(b)(1)(B), states:

**47 U.S.C. § 227. Restrictions on use of telephone equipment.**

\* \* \*

**(b) Restrictions on use of automated telephone equipment.**

(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

\* \* \*

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communications] Commission under paragraph (2)(B); . . . . [2]

---

**2.** The potential exemptions are described in 47 U.S.C. § 227(b)(2)(B) as follows:

(2) . . . [T]he Commission—

(B) may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe—

(i) calls that are not made for a commercial purpose; and

(ii) such classes or categories of calls made for commercial purposes as the Commission determines—

(I) will not adversely affect the privacy rights that this section is intended to protect; and

(II) do not include the transmission of any unsolicited advertisement; . . . .

The second pertinent provision, 47 U.S.C. § 227(b)(3), states:

(3) Private right of action.  A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

Accordingly, the TCPA prohibits the commercial use of prerecorded telephone messages in calls placed to residential telephone lines, subject to certain exemptions.  Further, the TCPA provides for pursuit of a private cause of action in State court seeking an injunction or damages or both.

At first blush, Congress's statutory scheme of creating a private cause of action for violation of a federal law, but requiring that such private cause of action be pursued only in state courts, seems like an oddity.  But, as Judge John C. Eldridge explained, writing for the Court of Appeals in *Levitt v. Fax.com, Inc.*, 383 Md. 141, 857 A.2d 1089 (2004)—a case involving the TCPA's prohibition on sending unsolicited advertisements via fax—the concept is not new even though it may have fallen into disuse in recent times.  Noting that "the United States Constitution established only one federal court, the Supreme Court of the United States, and [that] its jurisdiction is almost entirely appellate," *id.* at 148, 857 A.2d 1089, Judge Eldridge observed: "If Congress had chosen the constitutional option of not creating federal trial courts, jurisdiction

over virtually all federal causes of action would have been exclusively in state trial courts." *Id.* at 148–49, 857 A.2d 1089. And, "even though Congress did choose to create federal trial courts, it did not vest them with general federal question jurisdiction until 1875." *Id.* at 149, 857 A.2d 1089.

In *R.A. Ponte Architects, Ltd. v. Investors' Alert,* 382 Md. 689, 857 A.2d 1 (2004), the Court of Appeals reviewed a claim based upon the TCPA and confirmed that a private cause of action seeking damages pursuant to 47 U.S.C. § 227(b)(3) could be prosecuted in the courts of this State. The Court of Appeals stated: "The issue in this case concerns the Congressional intent underlying the phrase 'if otherwise permitted by the laws or rules of court of a State,' along with the relationship between the language of the federal statute and state law." *Id.* at 703, 857 A.2d 1. Reviewing the legislative history of the TCPA, the Court of Appeals stated, *id.* at 707, 857 A.2d 1:

Congress enacted the Telephone Consumer Protection Act in November 1991, and it was signed into law in December of that year. The purpose of the Act was to address telemarketing practices that were made possible by technological changes that resulted, *inter alia,* in a substantial increase in unsolicited commercial telephone calls and faxes, and the resulting expense and disruption imposed on the recipients. At that point in time, some states had begun to take action to restrict such telemarketing practices.... State laws, however, had limited effect because states did not have jurisdiction over interstate calls. The federal law was primarily intended to reach unsolicited facsimile and other telephone communications that crossed state lines, and fell outside the jurisdiction of the states.

The scant legislative history relative to the private cause of action authorized by 47 U.S.C. § 227(b)(3) was summarized by the Court of Appeals in *Ponte* as follows, *id.* at 709–11, 857 A.2d 1:

In introducing the "amendment" or "substitute bill" containing the private cause of action codified as 47 U.S.C.

§ 227(b)(3), Senator Hollings initially set forth some of the background for the provision (137 Cong. Rec. 30821[–30822]):

"The telemarketing industry appears oblivious to the harm it is creating. Two months ago, a representative of the Direct Marketing Association said on television that telemarketers have a right to call us in our homes. This is absurd. I echo Supreme Court Justice Louis Brandeis, who wrote 100 years ago that 'the right to be left alone is the most comprehensive of rights and the one most valued by civilized man.' "

\* \* \*

"The substitute bill contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. *The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine.* Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court. The consumer outrage at receiving these calls is clear. Unless Congress makes it easier for consumers to obtain damages from those who violate this bill, these abuses will undoubtedly continue."

"Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill."

The above-quoted statements by Senator Hollings contain essentially the whole legislative history underlying the private cause of action provision in 47 U.S.C. § 227(b)(3).

(Emphasis added by Court of Appeals in *Ponte.*)

Based upon the legislative history, the Court of Appeals concluded that the language in the TCPA that was deferential to the individual states—"if otherwise permitted by the laws or rules of court of a State"—was intended to avoid dictating "which court in a particular state had jurisdiction over the cause of action. What was left for the determination of state legislators was the 'proper venue.'" *Id.* at 711, 857 A.2d 1. Accordingly, the Court of Appeals rejected arguments that individual states could decide that private causes of action for TCPA violations could not be pursued in any of their courts, stating, *id.* at 711–12, 857 A.2d 1:

The substantive issue of whether the federal cause of action should be entertained in the appropriate state court was *not* a matter left to state legislators. While leaving to the states the determination of "the proper venue," the sponsor of the federal statute hoped that state legislatures would allow injured consumers to bring the actions in small claims or similar courts rather than in superior courts of general jurisdiction with their higher costs and substantial attorneys' fees.

*Accord* Robert R. Biggerstaff, *State Courts and the Telephone Consumer Protection Act of 1991: Must States Opt–In? Can States Opt–Out?*, 33 CONN. L.REV. 407, 408 (2001).

The *Ponte* Court rejected the argument that the phrase "if otherwise permitted by the laws or rules of court of a State" should be interpreted to make the private cause of action conditional upon legislative enactments in the individual states, observing: "[P]articularly in light of Senator Hollings's explanation, it seems clear that the word 'laws' covered matters such as the monetary jurisdiction of state courts and procedure in those courts." 382 Md. at 713, 857 A.2d 1. Emphasizing its view that the phrase was intended to allow

for variations among the states in the structure of their court systems, the Court of Appeals noted, *id.* at 712, 857 A.2d 1:

> [W]ith respect to both the federal government and the states, the monetary jurisdiction of different courts is determined by statutes enacted by legislative bodies. The same is true, subject to state constitutional requirements, concerning the general types of actions that may be brought in particular courts, the nature of the relief available in different courts, the availability of jury trials in some courts but not in others, etc.

To similar effect, the Court stated, *id.* at 715, 857 A.2d 1:

> In light of the sponsor's concern over the "proper venue" for actions under 47 U.S.C. § 227(b)(3), and his deference to state legislators concerning the proper venue and procedure for the federal cause of action, the reference to state "laws or rules of court" is understandable.

In the concluding paragraph of the *Ponte* opinion, the Court stated, *id.* at 719, 857 A.2d 1:

> We hold, therefore, that Maryland trial courts have jurisdiction over the private cause of action created by 47 U.S.C. § 227(b)(3). Whether a particular case under § 227(b)(3) should be brought in a circuit court or the District Court of Maryland will depend upon the amount of money involved and the monetary jurisdictional provisions, for civil actions at law for money damages, set forth in the Courts and Judicial Proceedings Article of the Maryland Code.

The Court of Appeals did not have occasion in *Ponte* to address the statute of limitations that would apply to a private cause of action asserted under 47 U.S.C. § 227(b)(3). But we view the *Ponte* Court's discussion of the legislative history of the TCPA as support for our conclusion that the federal "catch all" limitation statute—28 U.S.C. § 1658(a)—controls.

The federal statute of limitations was enacted by Congress on December 1, 1990, just a few months before Congress enacted the TCPA. Section 1628 provides: "Except as otherwise provided by law, a civil action arising under an Act of Congress, enacted after the date of the enactment of this

section may not be commenced later than 4 years after the cause of action accrues." (In 2002, this language was designated § 1658(a), without any change in wording.)

Two arguments have been advanced for applying the state statute of limitations rather than 28 U.S.C. § 1658(a). One argument is that Congress's inclusion in the TCPA of the phrase "if otherwise permitted by the laws or rules of court of a State" directs the state courts to apply state statutes of limitations. The second argument is that the private cause of action authorized by 47 U.S.C. § 227(b)(3) does not "arise under an Act of Congress" because such a private claim can only be asserted in a state court "if otherwise permitted by the laws or rules of court of a State." In our view, the legislative history of the TCPA, as set forth in detail and analyzed by the Court of Appeals in *Ponte,* supports neither of these arguments. Nor does the legislative history of 28 U.S.C. § 1658.

The history leading up to the enactment of 28 U.S.C. § 1658 was reviewed in detail by the United States Supreme Court in *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 377–80, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004), as follows:

In *Board of Regents of Univ. of State of N.Y. v. Tomanio,* 446 U.S. 478, 483, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), we observed that Congress' failure to enact a uniform statute of limitations applicable to federal causes of action created a "void which is commonplace in federal statutory law." Over the years that void has spawned a vast amount of litigation. Prior to the enactment of § 1658, the "settled practice was to adopt a local time limitation as federal law if it [was] not inconsistent with federal law or policy to do so." *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Such "[l]imitation borrowing," *Board of Regents v. Tomanio,* 446 U.S., at 484, 100 S.Ct. 1790, generated a host of issues that required resolution on a statute-by-statute basis. For example, it often was difficult to determine which of the forum State's statutes of limitations was the most appropriate to apply to the federal claim. We wrestled with that issue in *Wilson v. Garcia,* in which we

considered which state statute provided the most appropriate limitations principle for claims arising under 42 U.S.C. § 1983. 471 U.S., at 268, 276–279, 105 S.Ct. 1938 (resolving split of authority over whether the closest state analogue to an action brought under § 1983 was an action for tortious injury to the rights of another, an action on an unwritten contract, or an action for a liability on a statute). Before reaching that question, however, we first had to determine whether the characterization of a § 1983 claim for statute of limitations purposes was an issue of state or federal law and whether all such claims should be characterized in the same way. *Ibid.* Two years later, in *Goodman v. Lukens Steel Co.*, we answered the same three questions for claims arising under § 1981. 482 U.S., at 660, 661–662, 107 S.Ct. 2617. Both decisions provoked dissent and further litigation.

The practice of borrowing state statutes of limitations also forced courts to address the "frequently present problem of a conflict of laws in determining which State statute [was] controlling, the law of the forum or that of the situs of the injury." S.Rep. No. 619, 84th Cong., 1st Sess., 4–6 (1955) (discussing problems caused by borrowing state statutes of limitations for antitrust claims). Even when courts were able to identify the appropriate state statute, limitations borrowing resulted in uncertainty for both plaintiffs and defendants, as a plaintiff alleging a federal claim in State A would find herself barred by the local statute of limitations while a plaintiff raising precisely the same claim in State B would be permitted to proceed. *Ibid.* Interstate variances of that sort could be especially confounding in class actions because they often posed problems for joint resolution. See Memorandum from R. Marcus, Assoc. Reporter to Workload Subcommittee (Sept. 1, 1989), reprinted in App. to Vol. 1 Federal Courts Study Committee, Working Papers and Subcommittee Reports (1990), Doc. No. 5, p. 10 (hereinafter Marcus Memorandum). Courts also were forced to grapple with questions such as whether federal or state law governed when an action was "commenced," or when service of

process had to be effectuated. See *Sentry Corp. v. Harris,* 802 F.2d 229 (C.A.7 1986) (addressing those issues in the wake of our decision in *Wilson).* And the absence of a uniform federal limitations period complicated the development of federal law on the question when, or under what circumstances, a statute of limitations could be tolled. See 802 F.2d, at 234–242 (discussing conflicting authority on whether tolling was a matter of state or federal law); *Board of Regents v. Tomanio,* 446 U.S., at 485, 100 S.Ct. 1790 (explaining that " 'borrowing' logically included [state] rules of tolling").

Those problems led both courts and commentators to "cal[l] upon Congress to eliminate these complex cases, that do much to consume the time and energies of judges but that do little to advance the cause of justice, by enacting federal limitations periods for all federal causes of action." *Sentry Corp. v. Harris,* 802 F.2d, at 246. Congress answered that call by creating the Federal Courts Study Committee, which recommended the enactment of a retroactive, uniform federal statute of limitations. As we have noted, § 1658 applies only to claims arising under statutes enacted after December 1, 1990, but it otherwise follows the Committee's recommendation. The House Report accompanying the final bill confirms that Congress was keenly aware of the problems associated with the practice of borrowing state statutes of limitations, and that a central purpose of § 1658 was to minimize the occasions for that practice.

The history that led to the enactment of § 1658 strongly supports an interpretation that fills more rather than less of the void that has created so much unnecessary work for federal judges.

(Footnotes omitted.)

Given this background, the Supreme Court held that 28 U.S.C. § 1658 should be applied broadly to causes of action based upon any enactment passed by Congress after December 1, 1990, stating, *id.* at 382, 124 S.Ct. 1836:

We conclude that a cause of action "aris[es] under an Act of Congress enacted" after December 1, 1990—and therefore is governed by § 1658's 4–year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post–1990 enactment. That construction best serves Congress' interest in alleviating the uncertainty inherent in the practice of borrowing state statutes of limitations while at the same time protecting settled interests. It spares federal judges and litigants the need to identify the appropriate state statute of limitations to apply to new claims but leaves in place the "borrowed" limitations periods for preexisting causes of action, with respect to which the difficult work already has been done.

*See also North Star Steel Co. v. Thomas,* 515 U.S. 29, 34 n. *, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995) ("for statutes passed after December 1, 1990, ... 28 U.S.C. § 1658 ... supplies a general, 4–year limitations period for any federal statute subsequently enacted without one of its own") (dicta); MOORE'S MANUAL—FEDERAL PRACTICE AND PROCEDURE § 10.03[2][b][ii] (2009) ("This four year 'catch all' statute of limitations applies whenever a post 1990 congressional enactment creates a new federal right to maintain an action.").

Clearly, the right to pursue a private cause of action for a violation of the TCPA, as permitted by 47 U.S.C. § 227(b)(3), falls within the scope of coverage of 28 U.S.C. § 1658's 4–year statute of limitations as enunciated by the Court in *Jones.* Given the *Jones* Court's conclusion that 28 U.S.C. § 1658 applies "if the plaintiff's claim against the defendant was made possible by a post–1990 enactment," coupled with the fact that the TCPA was enacted in 1991, we are persuaded that 28 U.S.C. § 1658 applies to Worsham's claim.

Although it is true that the first clause in 28 U.S.C. § 1658(a) provides an exception to the 4–year statute of limitations if "otherwise provided by law," we see nothing in the legislative history of either the TCPA or 28 U.S.C. § 1658 that supports a rational conclusion that Congress intended for a different statute of limitations to apply to private causes of action pursued under 47 U.S.C. § 227(b)(3). The TCPA was

enacted just a few months after Congress adopted a provision that was supposed to provide a uniform statute of limitations for all subsequently enabled federal causes of action. It seems highly unlikely that, when Congress enacted the TCPA in 1991, it intended to engender more of the same problems that were caused by borrowing state limitations provisions prior to the 1990 enactment of 28 U.S.C. § 1658. And if Congress, in fact, had intended to exempt actions under the TCPA from the uniform federal statute of limitations, Congress could have chosen language that made such an intent more evident, or better yet, explicit.

As the Court of Appeals pointed out in *Ponte*, Senator Hollings's remarks regarding the private cause of action reflect a desire to respect a variety of state court structures. But there is nothing in Senator Hollings's remarks that suggests any intent to exempt the private cause of action in the TCPA from the recently enacted uniform federal statute of limitations.

We recognize that there is a split of authority among courts of other jurisdictions that have considered this question.[3] By resort to linguistic contortions, some courts have concluded that (a) a TCPA claim does not "arise under" an act of Congress, or (b) the catchall statute of limitations imposed by 28 U.S.C. § 1658 does not apply to TCPA claims because the TCPA provides "otherwise." In our view, *Jones* obviates the need for such verbal gymnastics. The applicable time limit for filing a private cause of action under 47 U.S.C. § 227(b)(3) is four years.

---

**3.** Among the cases that have held that the 4–year limitation period provided by 28 U.S.C. § 1658(a) applies are: *Sznyter v. Malone*, 155 Cal.App.4th 1152, 1167, 66 Cal.Rptr.3d 633, 644 (2007); *Zelma v. Konikow*, 379 N.J.Super. 480, 488, 879 A.2d 1185 (2005); *Stern v. Bluestone*, 47 A.D.3d 576, 582, 850 N.Y.S.2d 90, 96 (2008), *rev'd on other grounds*, 12 N.Y.3d 873, 883 N.Y.S.2d 782, 911 N.E.2d 844 (2009). Among cases that have held that the state's statute of limitations takes precedence over 28 U.S.C. § 1658(a) are: *Edwards v. Emperor's Garden Restaurant*, 122 Nev. 317, 327, 130 P.3d 1280, 1286–87 (2006); *David L. Smith & Associates, LLP v. Advanced Placement Team, Inc.*, 169 S.W.3d 816, 822 (Tex.App.-Dallas 2005).

Accordingly, Worsham's complaint was not barred by the statute of limitations, and the circuit court should not have dismissed the complaint on that basis.

We caution readers not to confuse actions filed pursuant to the federal TCPA with Maryland's similar, but distinct, statutes prohibiting telephone abuse, including Maryland Code (1975, 2005 Repl.Vol.), Commercial Law Article, §§ 14–1313, addressing unsolicited facsimile transmissions; 14–2201 et seq., the Maryland Telephone Solicitations Act; and 14–3201 et seq., the Maryland Telephone Consumer Protection Act. The statute of limitations for asserting claims pursuant to these Maryland statutes would be governed by State law rather than 28 U.S.C. § 1628(a). This would be true even for actions under the Maryland Telephone Consumer Protection Act, which, in part, in § 14–3201, declares it to be a violation of Maryland law for a person to violate the federal TCPA.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS N O T INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**