(273 P.3d 786)
No. 105,868

ANDERSON OFFICE SUPPLY, INC., a Kansas Corporation, Individually and as the Representative of a Class of Similarly Situated Persons, *Appellee*, v. ADVANCED MEDICAL ASSOCIATES, P.A., and JEFFREY L. DRAKE, d/b/a DRAKE CHIROPRACTIC, *Appellants*.

Opinion filed March 16, 2012.

*Lynn W. Hursh, Casey O. Housley*, and *Gerald A. King*, of Armstrong Teasdale LLP, of Kansas City, Missouri, for appellants.

*Rex A. Sharp* and *Barbara C. Frankland*, of Gunderson, Sharp & Walke, LLP, of Prairie Village, *Phillip A. Bock* and *Tod A. Lewis*, of Bock & Hatch, LLC, of Chicago, Illinois, and *Brian J. Wanca* and *Ryan M. Kelly*, of Anderson + Wanca, of Rolling Meadows, Illinois, for appellee.

Before GREENE, C.J., HILL, J., and MICHAEL E. WARD, District Judge, assigned.

HILL, J.: This is an interlocutory appeal of a district court's certification of a class action lawsuit that seeks recovery for claims made under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (2006). The technical questions raised by the appellant about the certification of the class, such as precertification discovery and commonality, are controlled by a recent Kansas Supreme Court decision concerning the Act and, thus, we affirm the rulings of the district court in accordance with that opinion. Besides the usual questions that concern the propriety of the class certification, this appellant also raises the issue of the applicable statute of limitations: either the federal 4-year limit or the state 1-year limit. Through the exercise of pendent jurisdiction, an appellate court may entertain additional questions in an interlocutory appeal as an act of judicial economy. Here, if the state statute applies, then there is no need for class certification. If the federal law controls, then the class action proceeds. Exercising pendent jurisdiction and being persuaded by the majority of other states that have addressed the issue, we hold that the federal 4-year statute of limitations applies to all actions in Kansas arising under the Telephone Consumer Protection Act. Applying the federal statute promotes the intent of Congress and avoids the problems that arise from limitation borrowing.

*The action begins after the transmission of unsolicited advertisements sent via facsimile.*

Jeffrey Drake owns Advanced Medical Associates, P.A., d/b/a Drake Chiropractic. Advanced Medical contracted with Business to Business Solutions to send fax advertisements to other businesses in the region close to Advanced Medical. Business to Business created an advertisement and, with Advanced Medical's approval, successfully delivered it to more than 5,000 telephone fax numbers in December 2005. Advanced Medical paid $268 to Business To Business for this service.

On November 2, 2009, Anderson Office Supply Inc. filed a class action petition against Advanced Medical in the Harvey County District Court. Anderson alleged that under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, entities are prohibited from having an agent send unsolicited fax advertisements. Anderson claimed Advanced Medical violated the Act on December 13, 2005, when Business To Business (on Advanced Medical's behalf) transmitted a fax advertisement to Anderson. Anderson therefore requested monetary relief and an injunction preventing further unlawful action by Advanced Medical. After that, Anderson asked the court for certification of the class under K.S.A. 2010 Supp. 60-223.

Both parties agree this case was filed after Anderson's counsel, while prosecuting another Telephone Consumer Protection Act case involving Business To Business, obtained Business To Business' archived computer files containing fax numbers that ultimately identified the class members in this case. Advanced Medical had concerns about the validity, authenticity, and accuracy of the electronic information obtained by Anderson's counsel, so it filed a memorandum opposing the motion for class certification and requested the opportunity for discovery related to the electronic information before any class was certified.

The district court denied Advanced Medical's request, reasoning that further discovery regarding the class members did not prevent class certification at that time because this type of discovery could be conducted while preparing the case for a trial on the merits.

The court then granted class certification after finding the proposed class met the requirements of K.S.A. 2010 Supp. 60-223(a) and certified the class under K.S.A. 2010 Supp. 60-223(b)(1)(A) and (b)(3). In doing so, the court rejected Advanced Medical's basis for opposing class certification—that the proper proceeding for an action such as this is small claims court, not a class action.

Then, Advanced Medical applied for permission to take an interlocutory appeal under K.S.A. 2010 Supp. 60-223, raising four issues: (1) whether the district court abused its discretion in certifying the class, (2) whether the district court abused its discretion in denying precertification discovery, (3) whether the class claims were barred by the Kansas statute of limitations, and (4) if certification was appropriate, whether it should have been limited to certification under K.S.A. 2010 Supp. 60-223(b)(1)(A).

Resolution of the statute of limitations dispute is crucial to this litigation. When Anderson filed the class action petition in the district court, it alleged that the fax advertisement at issue was transmitted on December 13, 2005. Advanced Medical then moved for judgment on the pleadings, arguing that under the Kansas statute of limitations—K.S.A. 60-514(c)—actions upon a statutory penalty must be brought within 1 year. The petition was filed on November 2, 2009—more than 1 year after the fax was transmitted. In response, Anderson argued the federal, 4-year statute of limitations applies in these actions—so its claims were timely made.

The district court agreed that the federal statute of limitations applies and denied Advanced Medical's motion. After noting Kansas had not determined which statute of limitations applies in Telephone Consumer Protection Act cases, and other states have ruled on both sides of the issue, the district court found that the majority of states apply the federal statute. The court believed that the rationale offered by the majority outweighed that offered by the minority.

*This court has pendent jurisdiction to decide which statute of limitation applies.*

Anderson argues this court lacks jurisdiction to consider the applicable statute of limitations because Advanced Medical took its

appeal under K.S.A. 2010 Supp. 60-223(f)—which permits an appeal from an order granting or denying class action certification. Thus, in its view, this court may only consider arguments regarding the certification of the class in this case—and cannot consider any argument about the applicable statute of limitations. Obviously, the question whether this court has subject matter jurisdiction is a question of law over which we exercise unlimited review. *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 414, 997 P.2d 681 (2000).

The doctrine of pendent jurisdiction controls this issue. In explaining the concept of pendent jurisdiction, our Supreme Court in *Williams v. Lawton*, 288 Kan. 768, 784, 207 P.3d 1027 (2009), said: "[T]he permissible scope of an interlocutory appeal . . . is not necessarily limited to the precise questions that may have been certified by the district court and an appellate court may have supplemental interlocutory jurisdiction."

The *Williams* court elaborated:

"Although there is little Kansas case law considering this concept, pendent or supplemental interlocutory jurisdiction was found to exist in *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 997 P.2d 681 (2000). In *Cypress Media*, this court recognized that in most circumstances an appellate court's task in an interlocutory appeal is to answer certified questions rather than to rule on the propriety of all underlying orders made by the district court. 286 Kan. at 414; see *Adams v. St. Francis Regional Med. Center*, 264 Kan. 144, 151, 955 P.2d 1169 (1998) ('The purpose of an interlocutory appeal is to resolve a "controlling question of law" that would materially expedite a final determination in the case.'). Nevertheless, an exception was recognized that applies where a certified issue in an interlocutory appeal is 'inextricably intertwined' with other issues that do not meet the criteria for an interlocutory appeal. Under the exception, the other issues may also be reviewed to allow meaningful review and promote judicial economy. *Cypress Media*, 268 Kan. 407, Syl. ¶ 2." 288 Kan. at 785.

The *Williams* court ultimately upheld this court's exercise of pendent interlocutory jurisdiction over an issue not identified as a certified question for appeal, as a determination on the certified question could become "meaningless" depending on the outcome on the noncertified issue. 288 Kan. at 786-87.

In this case, Advanced Medical raises the type of question that pendent jurisdiction is intended to answer. A determination of the

applicable statute of limitations could render class certification meaningless. If Anderson's claims are all barred by the statute of limitations, there is no class of plaintiffs. Thus, under these facts, the certification issue is "inextricably intertwined" with the statute of limitations issue because a determination on the latter could dispose of the case entirely. Clearly then, resolving the statute of limitations issue in this case promotes judicial economy and prevents this court from rendering an advisory opinion regarding certification.

In opposition to this view, Anderson argues that pendent jurisdiction may only apply where an appeal is brought under K.S.A. 60-2102(c) and there is "no authority extending the concept to appeals under K.S.A. 60-223(f)." That statute, of course authorizes appeals of orders granting class certification. On the other hand, K.S.A. 60-2102(c), which authorizes interlocutory appeals generally, permits a district court to indicate its order involves a controlling question of law and there is substantial ground for differences of opinion on the matter, so that an immediate appeal from the order may materially advance the ultimate termination of the litigation. Unfortunately, Anderson provides no authority or argument for the claim that pendent jurisdiction applies under the statute that deals generally with interlocutory appeals but does not apply under K.S.A. 60-223(f). Therefore, we are not so persuaded.

Going further, Anderson also points to the recent case of *Board of Sedgwick County Comm'rs v. City of Park City*, 260 P.3d 387, and argues appellate courts have no authority to create equitable exceptions to jurisdictional requirements. In *Park City*, the Kansas Supreme Court abolished the "unique circumstances" doctrine as a means of saving untimely appeals. 293 Kan. at 120. *Park City* is distinguishable from the present case and does not apply here. First, *Park City* does not involve the application of pendent jurisdiction, but involves the "unique circumstances" doctrine. *Park City* makes no mention of pendent jurisdiction. Second, a cursory review of the caselaw indicates the "unique circumstances" doctrine was applied to save untimely appeals. We have not found any case where it has ever been applied to save a question not certified for interlocutory review.

This court has pendent jurisdiction to consider the issue concerning the applicable statute of limitations.

*The 4-year statute of limitations applies.*

Advanced Medical maintains the district court erred in holding the federal statute of limitations applies to Telephone Consumer Protection Act actions brought in Kansas state courts. This court has unlimited review over the interpretation and application of a statute of limitations. *Four Seasons Apts. v. AAA Glass Service, Inc.*, 37 Kan. App. 2d 248, 250, 152 P.3d 101 (2007). Also, this question has not been previously resolved in Kansas. We are persuaded that the federal statute applies in Kansas cases because the Telephone Consumer Protection Act was passed by Congress 1 year after it had established a uniform statute of limitations for civil acts arising under any Act of Congress, and the Act had no internal limitation period set out in its text. Application of the federal statute would not only be in accord with the intent of Congress but would eliminate the problems arising from the borrowing of state statutes of limitations in actions involving claims arising from federal law.

A review of the statutes is important at this point. The general federal statute of limitations, set forth at 28 U.S.C. § 1658(a) (2006), states:

"Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."

This statute was enacted by Congress on December 1, 1990. After that, the Telephone Consumer Protection Act was enacted the following year, in 1991. See 47 U.S.C. § 227. Section (b)(1) of the statute provides that it is unlawful for any person in the United States:

"(C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless—
    (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
    (ii) the sender obtained the number of the telephone facsimile machine through—

(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,

except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before such date of enactment; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that complies with the requirements under paragraph (2)(E) . . . ."

The statute also provides:

"A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3).

The Act has no self-contained statute of limitations.

After the Act's passage, state courts began hearing these actions and were eventually forced to pick the applicable statute of limitations—the federal statute or their state's rule. As the parties here have properly stated, other states have ruled on both sides of the issue.

The States that apply state statutes of limitations rely upon the "except as otherwise provided by law" language found in the gen-

eral federal statute of limitations, 28 U.S.C. § 1658(a), as a way of applying the local statute of limitations. These states have ruled their state statutes of limitations are law "providing otherwise." Along the same line, other states rely upon language in the Act itself that states a party "may, if otherwise permitted by the laws or rules of court of a State," bring the action in state court. 47 U.S.C. § 227(b)(3). These states reason this language permits states to allow or disallow the action depending on the application of a state law or rule such as the state statute of limitations.

To the contrary, other states hold that the general federal statute of limitations applies to claims made in state court. A case from Maryland is instructive. In *Worsham v. Fairfield*, 188 Md. App. 42, 981 A.2d 24 (2009), the court made a thorough analysis of the legislative history of the Act, finding one Senator's statement regarding the "background" of the law illuminating. This Senator explained that the statute did not dictate which *court* in each state was the proper venue for such actions, as this was a matter for state legislation, but that the hope was that States would *make it easy for consumers to bring the actions*—such as by allowing them to bring actions in small claims courts. The Maryland Court of Appeals had previously construed this to mean that the "if otherwise permitted by the laws or rules of court of a State" language in the Act was intended to avoid dictating the proper *venue* for these lawsuits. 188 Md. App. at 50. Next, the *Worsham* court discussed the concerns about "limitations borrowing" that occurred prior to the enactment of 28 U.S.C. § 1658(a), which the United States Supreme Court had previously discussed in detail in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-80, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004). 188 Md. App. at 52-53.

In *Jones*, the Court had to decide what statute of limitations applied to a federal claim under 42 U.S.C. § 1981—the federal statute of limitations set forth at issue in the present case or the state personal injury statute. The *Jones* Court ultimately concluded the federal statute applies, stating:

"We conclude that a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—*if the plaintiff's claim against the defendant was made possible by a*

*post-1990 enactment.* That construction best serves Congress' interest in alleviating the uncertainty inherent in the practice of borrowing state statutes of limitations while at the same time protecting settled interests. It spares federal judges and litigants the need to identify the appropriate state statute of limitations to apply to new claims but leaves in place the 'borrowed' limitations periods for pre-existing causes of action, with respect to which the difficult work already has been done. (Emphasis added.)" 541 U.S. at 382.

The *Worsham* court summarized *Jones'* discussion about the problems associated with applying state statutes of limitations to federal claims when it was analyzing the Telephone Consumer Protection Act. Prior to the enactment of 28 U.S.C. § 1658(a), there was no uniform federal statute of limitations applicable to federal causes of action. So, when a federal claim was made in state court and the pertinent federal statute did not contain a statute of limitations, the state was forced to "borrow" a state statute of limitations. In doing so, the court was often forced to answer the difficult question of what state statute of limitations was most applicable to the federal claim at hand. 188 Md. App. at 52-54.

Other problems associated with the practice of borrowing state statutes of limitations include conflict of law problems (*i.e.*, which state law controls—the law of the forum or that of the situs of injury?) and uncertainty for litigants (*i.e.*, a plaintiff alleging a claim in State A could be barred by the state statute of limitations, while another plaintiff could be permitted to proceed under State B's statute). *Worsham,* 188 Md. App. at 53. According to *Jones,* 28 U.S.C. § 1658(a) was enacted to eliminate the problems associated with borrowing state limitations periods. *Worsham,* 188 Md. App. at 54.

The *Worsham* court ultimately concluded:

"Clearly, the right to pursue a private cause of action for a violation of the [Act], as permitted by 47 U.S.C. § 227(b)(3), falls within the scope of coverage of 28 U.S.C. § 1658's 4-year statute of limitations as enunciated by the Court in *Jones.* Given the *Jones* Court's conclusion that 28 U.S.C. § 1658 applies 'if the plaintiff's claim against the defendant was made possible by a post-1990 enactment,' coupled with the fact that the [Act] was enacted in 1991, we are persuaded that 28 U.S.C. § 1658 applies to Worsham's claim.

"Although it is true that the first clause in 28 U.S.C. § 1658(a) provides an exception to the 4-year statute of limitations if 'otherwise provided by law,' we see nothing in the legislative history of either the [Act] or 28 U.S.C. § 1658 that

supports a rational conclusion that Congress intended for a different statute of limitations to apply to private causes of action pursued under 47 U.S.C. § 227(b)(3). The [Act] was enacted just a few months after Congress adopted a provision that was supposed to provide a uniform statute of limitations for all subsequently enabled federal causes of action. It seems highly unlikely that, when Congress enacted the [Act] in 1991, it intended to engender more of the same problems that were caused by borrowing state limitations provisions prior to the 1990 enactment of 28 U.S.C. § 1658. And if Congress, in fact, had intended to exempt actions under the [Act] from the uniform federal statute of limitations, Congress could have chosen language that made such an intent more evident, or better yet, explicit." 188 Md. App. at 55-56.

Like *Worsham*, the Superior Court of New Jersey also relied on *Jones* to hold the federal statute of limitations applies in actions arising from the Act. In *Zelma v. Konikow*, 379 N.J. Super. 480, 879 A.2d 1185 (2005), the court rejected the argument that language in the Act indicating a person may bring an action "if otherwise permitted by the laws or rules of court of a State" means state statutes of limitations apply. 379 N.J. Super. at 485. The court stated:

"Absent a state limitation period specifically applicable to [the Act] claims, the use of state limitation periods based on analogous causes of action under state law would complicate not facilitate pursuit of the private [Act] remedy. We are mindful of the difficulties that confront state courts and litigants compelled to identify an analogous state cause of action in order to select a limitation period." 379 N.J. Super. at 486-87.

As the court noted, the case before it illustrated the difficulty of limitation borrowing—as several New Jersey statutes of limitations could apply in the case. 379 N.J. Super. at 487. The court stated:

"In short, the effort to apply an existing limitation period would reintroduce complexity and uncertainty of the sort that 28 U.S.C. § 1658 was designed to eliminate without furthering any state interest Congress sought to protect by making the [Act] private cause of action available only 'if otherwise permitted' by state law." 379 N.J. Super. at 488.

See *Sznyter v. Malone*, 155 Cal. App. 4th 1152, 1168, 66 Cal. Rptr. 3d 633 (2007); *Benedia v. Super Fair Cellular, Inc.*, 2007 WL 2903175 (N.D. Ill. 2007) (unpublished opinion).

In opposition to the application of the 4-year statute of limitations, Advanced Medical cites *Edwards v. Emperor's Garden Rest.*,

122 Nev. 317, 130 P.3d 1280 (2006), and *David L. Smith and Associates v. APT*, 169 S.W.3d 816 (Tex. App. 2005). These cases are not persuasive.

Neither the Nevada nor Texas state courts in *Edwards* and *Smith* set forth the extensive analysis found in the Maryland and New Jersey opinions cited above. In *Edwards*, the Nevada Supreme Court simply set forth the "[e]xcept as otherwise provided" language of the federal statute and the "if otherwise permitted by" language of the Act and concluded state law applies. 122 Nev. at 326-28. The *Edwards* court did not discuss the historical background of the federal statute of limitations or address the legislative history of the Act. The *Edwards* court found *Jones* inapplicable in that *Jones* addressed the problems associated with federal courts borrowing state statutes of limitations and the work this created for federal judges—something the *Edwards* court did not believe applied to claims under the Act brought in state court. 122 Nev. at 328 n.30.

Similarly, the *Smith* court based its holding on the statutory language of the competing law. And like *Edwards*, the *Smith* court did not discuss the historical background and legislative history of the law. *Smith* relied upon *Chair King, Inc. v. GTE Mobilnet of Houston*, 135 S.W.3d 365 (Tex. App. 2004), a prior Texas case that held the state statute of limitations applies to actions arising under the Act. The significance of *Chair King* is questionable, however, given the decision has since been overturned by the Texas Supreme Court—as the court ruled the plaintiffs in that case had no cause of action, since Texas did not recognize actions under the Act in state court when the claim was made. See *The Chair King, Inc. v. GTE Mobilnet of Houston*, 184 S.W.3d 707 (Tex. 2006). Furthermore, as *Zelma* pointed out, the 2004 *Chair King* opinion was decided only 3 days after *Jones* was decided—and did not mention or apply *Jones*. 379 N.J. Super. at 489.

The other cases Advanced Medical relies upon do not address the applicable statute of limitations and are therefore unhelpful. See *Consumer Crusade v. Affor. Health Care Sol.*, 121 P.3d 350 (Colo. App. 2005); *Kruse v. McKenna*, 178 P.3d 1198 (Colo. 2008). *Sun Oil Co. v. Wortman*, 486 U.S. 717, 108 S. Ct. 2117, 100 L.

Ed. 2d 743 (1988), which Advanced Medical cites when arguing the United States Supreme Court has recognized the states' rights to apply their own procedural rules, including statutes of limitations, was decided in 1988—well before the enactment of the general federal statute of limitations and the Act.

Those courts that have thoroughly analyzed the issue have found in favor of applying federal law. Their reasoning is persuasive. The logic is straightforward. The plain language of 28 U.S.C. § 1658(a) states that "a civil action arising under an Act of Congress enacted after the date of the enactment of [28 U.S.C. § 1658(a)] may not be commenced later than 4 years after the cause of action accrues." Congress enacted 28 U.S.C. § 1658(a) in 1990. The Telephone Consumer Protection Act, which contains no statute of limitations of its own, was enacted in 1991. See 47 U.S.C. § 227 *et seq*. The statute of limitations set forth at 28 U.S.C. § 1658(a) therefore applies to claims made in Kansas state courts under the Act.

We note that our Kansas Supreme Court has not been hesitant in other contexts to hold that a federal statute of limitations applies to federal claims made in state court. See *Cadle Company II, Inc. v. Lewis*, 254 Kan. 158, 864 P.2d 718 (1993).

Also, because the federal statute of limitations applies, we need not determine which Kansas statute of limitations would apply to a claim under the Act. As *Zelma* pointed out, determining the applicable Kansas statute illustrates the very problem associated with limitations borrowing. 379 N.J. Super. at 487. For this reason, we need not address Advanced Medical's discussion about *Alexander*, treble damages, and other remedies.

On appeal, Advanced Medical relies upon *Burnett v. Southwestern Bell Telephone*, 283 Kan. 134, 151 P.3d 837 (2007), for the general rule that state statutes of limitations should be borrowed when federal statutes do not contain explicit limitations periods. In *Burnett*, the Kansas Supreme Court held the 3-year statute of limitations set forth at K.S.A. 60-512(2) applies when a plaintiff brings a federal ERISA claim in state court. 283 Kan. at 134. In our view *Burnett* is inapplicable for two reasons.

First, neither party in *Burnett* argued the federal statute of limitations applied in the case. The court noted: "[I]t is undisputed

that Kansas law should apply . . . ." 283 Kan. at 139. Second, ERISA was enacted in 1974. See 29 U.S.C. § 1140. The federal statute of limitations applies to civil actions arising under Acts of Congress enacted after December 1, 1990—such as the Act here. See 28 U.S.C. § 1658(a). The federal statute does not apply to ERISA claims because ERISA was enacted well before December 1, 1990.

Advanced Medical also argues that the reasoning of courts applying the federal statute of limitations is flawed because of their reliance on *Jones.* In Advance Medical's view, *Jones* addressed the problems associated with federal courts borrowing state statutes of limitations—an analysis that does not apply when an action such as the present one is brought in state court. We are not persuaded.

As the *Worsham* court explained, the federal statute of limitations was enacted to address the problems associated with limitations borrowing, such as forcing states to determine the applicable state statute when a federal claim is made. As noted above, other problems associated with limitations borrowing include conflict of law and litigant uncertainty issues. 188 Md. App. at 52-54. The potential for these problems to exist is present whether an action is brought in federal court or state court.

The district court did not err in holding the federal statute of limitations applies to Telephone Consumer Protection Act claims brought in Kansas state courts. The district court did not err in denying Advanced Medical's motion for judgment on the pleadings based on the state statute.

*The district court exercised proper discretion when it certified this class.*

Advanced Medical claims the district court abused its discretion in three ways when it granted class certification. First, it did not conduct a rigorous analysis when determining whether the class met the legal requirements for class actions since it refused to permit discovery before the class was certified. Additionally, Advanced Medical argues the putative class does not meet some of the technical requirements for class certification. And finally, class actions are not contemplated under the Act. We will examine those arguments in that order.

In our view, much of this controversy has been put to rest by the recent opinion of the Kansas Supreme Court in *Critchfield Physical Therapy v. The Taranto Group, Inc.*, 293 Kan. 285, 263 P.3d 767 (2011). Some general points made in *Critchfield* bear repeating here. Generally, when a discretionary decision is made within the proper legal standards and takes into account the proper factors, a decision will withstand review even if it appears unwise. Although the district court has substantial discretion in determining whether a class should be certified, the court's decision must be rigorously analyzed in light of the provisions of K.S.A. 2010 Supp. 60-223. 293 Kan. at 292.

Subsection (a) of that statute sets out four requirements for class certification:

"One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) The class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." K.S.A. 2010 Supp. 60-223.

These threshold requirements have been summarized as numerosity, commonality, typicality, and adequacy of representation. 293 Kan. at 289.

K.S.A. 2010 Supp. 60-223 continues:

"(b) *Types of class actions.* A class action may be maintained if the prerequisites of subsection (a) are satisfied and if:

(1) Prosecuting separate actions by or against individual members would create a risk of:

(A) Inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a

class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) The class member's interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

We turn now to the issues raised by Advanced Medical in light of the holding in *Critchfield.*

### *Failure to permit discovery*

Advanced Medical wanted to conduct precertification discovery based on the belief that the Business To Business electronic data was unreliable and thus inadmissible. If the data is unreliable, then it follows that there would be no way of reliably identifying the putative class members and thus show any liability by Advanced Medical.

Specifically, Advanced Medical contends Anderson identified the plaintiff class through fax numbers contained in Business To Business' archived computer files. According to Advanced Medical, after Anderson's expert reviewed Business To Business' computer files, he prepared a list of 5,170 fax numbers to which Advanced Medical successfully transmitted a fax—and that this list formed the basis for the plaintiff class in this case.

According to Advanced Medical, the problem with this procedure is that Anderson's counsel obtained these computer files through discovery in two Illinois cases in which Business To Business was involved. Advanced Medical contends that a Business To Business representative gave counsel its computer information in reliance on the attorney's assurance that the information would be kept confidential and would only be used in connection with the Illinois lawsuits, and that Anderson's counsel was not given permission to use the computer information in connection with any lawsuits other than the Illinois actions.

Advanced Medical also notes there are "chain of custody" issues with the computer information—alleging that in an Illinois case, a Business To Business representative testified she was uncertain what computer the information came from or how often the in-

formation was compiled and backed up, and the computer files were not created and maintained in the ordinary course of business. Advanced Medical also claims the Business To Business representative may not be credible because she was previously involved in a business that sold fake permits and degrees. On appeal, Advanced Medical says Anderson's motion for class certification "relied completely upon its expert's opinions"—which were based only on the computer information.

Anderson does not dispute any of this. In reply, Anderson avers (1) Advanced Medical made no effort to conduct discovery regarding the electronic information during the 4 months between the motion for class certification and Advanced Medical's objection to the motion, and (2) Advanced Medical's alleged "evidence" that casts doubt on the reliability of the electronic information is merely hypothetical and goes to admissibility and the weight a trier of fact may give the evidence at trial. The district court agreed with the latter and held that further discovery regarding the class members did not prevent class certification. The court reasoned that the additional discovery suggested by Advanced Medical could be conducted while the parties prepared the case for a trial on the merits. Based on the ruling in *Critchfield*, we must agree.

In *Critchfield*, Taranto Group, Inc. hired two vendors to send out unsolicited fax advertisements. In the action that followed, the district court granted class action certification despite "incomplete" discovery with regard to the number of fax recipients that may have consented to receiving the fax or had an ongoing business relationship with Taranto. As in this case, the defendants on appeal argued the district court failed to conduct a rigorous analysis when determining whether class certification was required.

On appeal, the Supreme Court stated that the court is not required to conduct "a mini-trial with extensive fact-finding before certifying or denying certification to a class," but that it must only "rigorously analyze the proffered evidence to determine whether the plaintiffs have met or are likely to meet the statutory requirements for certification." 293 Kan. at 293. The court noted that although a determination as to the identity of the fax recipients and whether those parties consented or had an established business

relationship with Taranto were "major evidentiary stumbling blocks for the class," they were not "inherent barriers to class certification." 293 Kan. at 294. The court stated that it "was unnecessary for the district court to require the plaintiff to prove at the time of certification that all or most of the potential class were entitled to damages under the Act." 293 Kan. at 294. The court determined the district court had engaged in a rigorous analysis of the certification factors "without conducting a trial within a trial to determine the relationship of each potential class member with the defendant." 293 Kan. at 295.

Like those in *Critchfield,* the defendants in this case cannot escape liability by simply claiming its vendor's records are unreliable. See *Critchfield,* 293 Kan. at 295. It was not necessary for the district court to require that Anderson prove at the time of certification that Business To Business's electronic information was admissible—a determination that would have required extensive fact-finding. The district court did not abuse its discretion in granting class certification without first conducting discovery and a determination of the merits regarding the reliability of the electronic information.

This case does differ from *Critchfield* in one way. Here, a single determination (*i.e.,* that the electronic information is inadmissible) could bar *every plaintiff in the class* from proceeding against Advanced Medical. In *Critchfield,* individual determinations regarding consent and relationship would have been more time and fact intensive and only barred certain plaintiffs from proceeding. Nevertheless, as the *Critchfield* court pointed out, the district court is not required to conduct "a mini-trial with extensive fact-finding before certifying or denying certification to a class." 293 Kan. at 293. Advanced Medical's opportunity to present further evidence will be available when the case proceeds to trial; if evidentiary problems arise, the district court may dismiss the case. See *Critchfield,* 293 Kan. at 310.

We also note that Advanced Medical's concerns about the electronic information (*i.e.,* that Business To Business was not certain what computer the information came from or how often the information was compiled and backed up, the computer files were

not created and maintained in the ordinary course of Business To Business' business, and the Business To Business representative was not a credible witness) is based on testimony procured in an Illinois case and not this case.

### Failure to analyze putative class members

Advanced Medical next complains that the district court did not determine how many of the putative class members successfully received a fax, did not determine whether any of the class members consented to receiving the fax or had a business relationship with Drake, and did not compel Anderson to identify the class members.

Complaints similar to these were raised and rejected in *Critchfield*.

First, in *Critchfield*, the court rejected the argument that plaintiffs must show that each member of the class received the fax at issue. 293 Kan. at 299. Noting the plain language of the Act specifically prohibits the use of electronic devices "to send" unsolicited advertisements (and includes no requirement that the transmission be received), the court concluded that the Act does not require a defendant to successfully complete a fax transmission—but only requires that he attempt to do so. 293 Kan. at 299; see 47 U.S.C. § 227(b)(1)(C).

The *Critchfield* court also rejected the argument that there was no "commonality" among the plaintiffs because some may have consented to receiving the fax or had an established business relationship with the defendant. 293 Kan. at 297. Instead, the court agreed with other courts that hold affirmative defenses of some plaintiffs should not prevent class certification. The court stated:

"Although Taranto may be able to show that some putative members of the plaintiff class fall within the statutory exceptions, this possibility does not defeat certification at this stage of the proceeding. It should be a relatively simple matter to separate those parties out of the class without requiring a series of mini-trials on the question of consent or an established business relationship. If Taranto demonstrates that so many parties fall within the exceptions that the integrity of the class is undermined, then the district court may consider decertifying the class." 293 Kan. at 297.

Likewise, it was unnecessary for the district court in this case to conduct a series of mini-trials to determine whether each class

member had consented to receiving the fax or had a business relationship with Drake. If it is later discovered that many of the class members have no claim under the Act on these bases, the district court may consider decertifying the class.

Based on *Critchfield*, we must also reject Advanced Medical's argument about identification of the class members. In *Critchfield*, the court stated that although the class definition must be precise enough to allow courts and parties to determine in advance of adjudication whether parties belong to the class, the plaintiff is not required to allege the exact number or identity of the class members. 293 Kan. at 307.

In rejecting Advanced Medical's motion to compel, the district court explained that Advanced Medical had been provided with a disk containing all the local fax numbers Business To Business sent faxes to, and "the names, or potential names, of any class action members that were known" to Anderson were contained on the disk. Thus, the court concluded, Advanced Medical was "just as capable" as Anderson of "running down who these fax numbers belong[ed] to" in order to determine the potential members of the class.

On appeal, Advanced Medical does not claim it was not provided this disk, for example, or that it was unable to tie the fax numbers to the class members. Advanced Medical simply says the identity of the prospective class members was "critically important," the district court should not have placed the burden upon Advanced Medical of determining who the fax numbers belonged to, and the plaintiffs needed to show the faxes were unsolicited.

Advanced Medical's argument is not persuasive. Advanced Medical has not alleged or demonstrated it was unable to determine the identities of the plaintiffs based on the information it was given and has not articulated what information it was lacking.

*Failure to show the prerequisites for class certification*

Advanced Medical next argues Anderson cannot demonstrate "commonality" among the members of the class in this case because there is no proof all class members suffered the same injury. Advanced Medical reasons that the class representative testified he

did not recall receiving the fax at issue, and says class members who cannot recall receiving the fax have no damages. The *Critchfield* court rejected this same argument, stating it is "unnecessary for plaintiffs to prove that they actually received the [fax] transmissions," and this issue will not defeat commonality. 293 Kan. at 299.

Advanced Medical also argues the Act is not intended for class action lawsuits. The *Critchfield* court explicitly rejected this argument as well. 293 Kan. at 300-01. The court reasoned:

> "We do not agree with the defendant's contention that over 100,000 individual small claims actions would be superior to a single class action. While the defendant in such an action might benefit if only a small number of plaintiffs found it worth their while to bring suit or were aware of their rights under the [Act], this small turnout would serve only to frustrate the intent of the [Act] and to protect junk fax advertisers from liability. It would, accordingly, not provide a 'superior' method for individual plaintiffs. If, on the other hand, many thousands of plaintiffs elected to pursue their rights in small claims courts, those courts would be overwhelmed, plaintiffs would have to invest time and money in prosecuting their claims, and the defendant would have to appear in thousands of actions around this state and other states." 293 Kan. at 300-01.

On this same note, *Critchfield* rejected the argument that Act class actions are inferior to small claims actions because of the threat of " 'annihilating' " judgments in favor of the class. 293 Kan. at 302. The court reasoned that if a defendant engaged in widespread violation of the law, class certification would actually *fulfill* the purpose of class action litigation, and "the threat of catastrophic judgments should not protect parties that violate the law on a large scale." 293 Kan. at 302. This disposes of Advanced Medical's argument that class certification is inappropriate because it will create horrendous statutory damages disproportionate to the injury suffered by the class.

Contrary to Advanced Medical's claims, the record in this case reflects the district court conducted a thorough and rigorous analysis before certifying the class action. And as Anderson points out on appeal, many of the arguments made by Advanced Medical on appeal—such as those regarding commonality and typicality—were not raised below.

In its decision granting class certification, the district court observed that Advanced Medical had raised no issue with respect to the requirements of K.S.A. 2010 Supp. 60-223(a)—although the district court found these requirements had been met. Indeed, in Advanced Medical's memorandum in opposition to Anderson's motion for class certification, Advanced Medical only argued that class actions were not the superior procedure for dealing with Act claims—and the small claims procedure was most appropriate. Issues not raised before the district court cannot be raised on appeal. *ARY Jewelers v. Krigel*, 277 Kan. 27, 36, 82 P.3d 460 (2003).

In the absence of some indication the court is departing from its previous position, this court is duty bound to follow Supreme Court precedent. *State v. Perry*, 39 Kan. App. 2d 700, 701, 183 P.3d 12 (2008). Obviously, there is no indication the court is departing from its very recent opinion in *Critchfield*. Based on *Critchfield*, we must reject the arguments raised by Advanced Medical with regard to class certification. There is nothing to suggest the district court in this case abused its discretion in granting class certification.

*Statutory basis for granting class certification*

Advanced Medical's final argument concerns the district court's statutory basis for granting class certification. The district court granted class certification under K.S.A. 2010 Supp. 60-223(b)(1)(A) and (b)(3). On appeal, Advanced Medical argues certification should be limited to K.S.A. 2010 Supp. 60-223(b)(1)(A)—and the action should not have been certified under (b)(3). The only explanation Advanced Medical offers to support its claim is that (1) the class action petition seeks monetary *and* injunctive relief, and (2) if the action is certified under K.S.A. 2010 Supp. 60-223(b)(1)(A), Anderson must notify the putative class members of their right to "opt-in"—so precertification discovery is necessary, as class members must be identified for purposes of notification.

A recent United States Supreme Court case is instructive here. In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361-62, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011), the United States Supreme Court stated that the (b)(1) and (b)(2) classes are "mandatory classes," as

there is no opportunity for those class members to "opt out" of the class and the district court is not required to give class members notice of the action. The Court explained that unlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory, as class members are entitled to receive notice of the action and may choose to withdraw from the class. 564 U.S. at 362.

The Kansas statute, which mirrors the Federal Rule construed in *Dukes*, provides that for classes certified under (b)(1) or (b)(2), the district court *"may* direct appropriate notice to the class"; conversely, for classes certified under (b)(3), the court *"must"* give class members the best notice that is practicable under the circumstances. K.S.A. 2010 Supp. 60-223(c)(2)(A), (B). This notice to (b)(3) class members must indicate that the court will exclude from the class any member who requests exclusion. K.S.A. 2010 Supp. 60-223(c)(2)(B)(v).

Advanced Medical's argument about the appropriate statutory basis for certification is premised on the assertion that if the action is certified under (b)(1)(A), Anderson must notify the putative class members of their right to "opt-in." However, the statute does not provide that putative class members must be notified and "opt-in" when a class action is certified under (b)(1)(A). We note that Advanced Medical fails to provide any other authority indicating this is so. To the contrary, *Dukes* indicated the (b)(1) class is a mandatory class and no notice to its members is required. We hold this view from *Dukes* controls the issue.

In this case, Anderson requested both monetary and injunctive relief in its petition. In *Critchfield*, the court held that monetary damages are appropriate under K.S.A. 2010 Supp. 60-223(b)(1)(A). 293 Kan. at 305. Both the court and the parties in *Critchfield* seemed to assume that injunctive relief for "prospective conduct" is appropriate under K.S.A. 2010 Supp. 60-223(b)(1)(A)—and Advanced Medical does not argue that injunctive relief is inappropriate under that section. But the *Critchfield* court did not indicate that a class action would have been inappropriate under (b)(3). Therefore, Advanced Medical provides no real support for why this class action should *not* have been certified under (b)(3).

Advanced Medical has provided no valid basis for concluding the district court erred or abused its discretion in certifying the class action under both K.S.A. 2010 Supp. 60-223(b)(1)(A) and (b)(3).

Affirmed.