NOT DESIGNATED FOR PUBLICATION

No. 114,103

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of THE JOSEPH A. BULGER LIVING TRUST, as Amended and Restated on February 20, 2003, and Further Amended on September 7, 2005; THE HAZEL R. BULGER LIVING TRUST, as Amended and Restated on January 20, 2003, and Further Amended on September 7, 2005; THE DURABLE POWER OF ATTORNEY OF JOSEPH A. BULGER, Dated January 30, 2003; and THE DURABLE POWER OF ATTORNEY OF HAZEL R. BULGER, Dated January 30, 2003.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; J. PATRICK WALTERS, JEFFREY E. GOERING, WILLIAM S. WOOLLEY, and SETH L. RUNDLE, judges. Opinion filed April 14, 2017. Affirmed in part, dismissed in part, and remanded with directions.

*Kevin M. McMaster*, of McMaster & McMaster, LLC, of Wichita, for appellants Joseph A. Bulger Living Trust and interested parties, Jo Ann Briggs, Judith A. Krulish, and Thomas M. Bulger.

*Willian P. Tretbar*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellee James R. Bulger.

*Hugh W. Gill*, of Hinkle Law Firm LLC, of Wichita, for appellee guardian ad litem for Joseph A. Bulger and Hazel R. Bulger.

*Joan M. Bowen*, of counsel, Conlee, Schmidt & Emerson, LLP, of Wichita, for appellee guardian ad litem for N.B., the minor child of Thomas M. Bulger, and for any unborn and unascertained issue who may have had an interest in the proceedings.

Before HILL, P.J., BUSER and LEBEN, JJ.

1

BUSER, J.: This appeal originated as a dispute involving the four adult children of Joseph A. Bulger and Hazel R. Bulger over the administration of the parents' two trusts, the Joseph A. Bulger Living Trust and the Hazel R. Bulger Living Trust. After mediation, the parties entered into a settlement agreement, which the district court approved. The district court then filed a journal entry dismissing the case with prejudice.

Relevant to this appeal, the journal entry directed the guardians ad litem, who had been appointed to represent the interests of the settlors and minor contingent beneficiaries of the trusts, to submit their applications for allowance of fees within 20 days. Both guardians ad litem filed motions for approval and payment of their attorney fees. Over the objection of the Joseph A. Bulger Living Trust and interested parties, Jo Ann Briggs (trustee and beneficiary), Judith A. Krulish (beneficiary), and Thomas M. Bulger (trustee and beneficiary), the district court granted both motions.

The objecting parties filed this appeal, challenging the legality of the district court's ruling appointing the guardians ad litem. Based on our review, we find a lack jurisdiction to consider this particular issue because appellants neglected to file their notice of appeal within 30 days of the entry of judgment—the journal entry approving the settlement agreement and dismissing the case with prejudice. Accordingly, we dismiss that part of the appeal.

We do, however, have jurisdiction to review the appellants' claim that the district court erred in its award of the amount of fees to the guardians ad litem and, therefore, their fees should not be paid. Upon our review, we conclude the district court did not err in awarding the requested attorney fees to the guardians ad litem. That part of the appeal is affirmed. Finally, we grant judgment in favor of the guardians ad litem for appellate attorney fees.

2

Joseph A. Bulger and Hazel R. Bulger, a married couple, established an estate plan, which consisted of two revocable living trusts, the Joseph A. Bulger Living Trust and the Hazel R. Bulger Living Trust, pour-over wills, and durable powers of attorney. Under the terms of the trusts, Joseph and Hazel, as settlors, retained the power during their lifetimes to direct and receive income and principal from their respective trusts. Additionally, each spouse granted the other spouse the right to receive distributions from their respective trust provided the settlor's needs were met and the distribution was necessary for purposes of health, education, support, or maintenance.

The trusts also provided that upon the death of Joseph or Hazel, the trust's assets would be transferred to a marital trust for the benefit of the surviving spouse, and when the surviving spouse died, the residue, as a general matter, would be distributed equally among the couple's four adult children, Jo Ann Briggs, Judith A. Krulish, James R. Bulger, and Thomas M. Bulger (who had a trust) and their children. The trusts also provided that the share of each of Joseph and Hazel's "grandchild or more remote Issue of [the settlor] be subject to the Contingent Trust provisions . . . applicable to beneficiaries under the age of twenty-one (21) years."

Although Joseph and Hazel served as the initial trustees of their respective trusts, the trusts and durable powers of attorney provided that in the event they both became incapacitated, three of their four children, Jo Ann, James, and Thomas, would serve as successor co-trustees and attorneys-in-fact under a system of majority rule.

In 2011, healthcare providers determined that Joseph and Hazel were no longer able to manage their own affairs due to illnesses. As a consequence, Jo Ann, James, and Thomas began acting in the capacity of co-trustees and attorneys-in-fact. Unfortunately, the three siblings were unable to work cooperatively with one another.

On June 18, 2012, James filed a petition under the Kansas Uniform Trust Code, K.S.A. 58a-101 *et seq.*, and the Kansas Power of Attorney Act, K.S.A. 58-650 *et seq.*, alleging that Thomas had "misappropriated hundreds-of-thousands of dollars in assets belonging to [Joseph and Hazel] and/or their respective trusts," and that Jo Ann may have been complicit in the conversion. In response, Jo Ann, Thomas, and Judith counterclaimed, alleging that James had "acted contrary [to] the directions of the [Bulgers'] health care provider, misappropriated funds or attempted to misappropriate funds, [and] failed to fulfill his duties as a co-trustee."

At the time, Joseph and Hazel had several grandchildren, one of whom was a minor. In conjunction with his petition, James filed a motion for the appointment of a guardian ad litem to represent the interests of the minor grandchild, N.B. (Thomas' youngest daughter), and any unborn and unascertained issue who may have an interest in the proceedings. Later that day, the district court entered an order appointing Jeffrey R. Emerson, an attorney, as guardian ad litem. Although the proceeding occurred ex parte, the district court found that "[n]otice of the time and place of hearing [was] not necessary or required by law." About a month later, James and Emerson orally moved for an order substituting Emerson's colleague, Joan M. Bowen, an attorney, as the guardian ad litem. Following an ex parte proceeding, the motion was sustained.

On November 27, 2012, James moved for the appointment of a guardian ad litem for Joseph and Hazel. In response, Jo Ann, Judith, and Thomas opposed James' motion on the ground that the appointment was not authorized by statute, had no purpose, and would waste the assets of the estate.

At the hearing on the motion, James asserted that under to K.S.A. 58a-305 and K.S.A. 2016 Supp. 60-217(c), the district court had the authority to appoint a guardian ad litem for Joseph and Hazel because, as the primary beneficiaries of the trusts, they were

4

the "true stakeholders" in this action and the fiduciaries named in their estate planning documents could not adequately represent their interests because they were currently at war with one another. Bowen supported James' motion. Jo Ann, Judith, and Thomas, on the other hand, argued that K.S.A. 58a-305 did not envision the appointment of a guardian ad litem under the circumstances, and the appointment was unnecessary because the couple's estate planning documents sufficiently protected their interests.

After considering the parties' arguments, the district court appointed Hugh Gill as guardian ad litem to represent the interests of Joseph and Hazel. The district judge explained:

> "In looking at this, the Court notes, number one, that the minor beneficiaries are supporting the request for a guardian ad litem, the contingent beneficiaries, born and unborn. We're talking about the assets of [Joseph] and Hazel. They currently are not represented directly. They do have an interest in what happens with their assets.
> "There is no dispute for purposes of this hearing that their capacity—certainly Hazel's—is not there; and [Joseph]'s is questionable, as to their capacity to represent themselves in this case. And the Court notes that both sides are alleging improper financial transactions have been taken by the opposing sides with regard to [Joseph's] and Hazel's assets. And while I understand that the trust documents provide for majority rule, that does not, in my review of the documents, eliminate the right of the minority voters to seek redress for what they consider to be legally improper transactions with regard to the trust."

On December 11, 2013, Thomas filed a motion to remove Bowen as guardian ad litem. Thomas contended that Bowen's appointment violated his due process rights because of inadequate notice and not having an opportunity to be heard. Thomas also claimed the appointment was unnecessary because he was N.B.'s natural father, represented by counsel, and no longer married to N.B.'s mother. Following a hearing, the

5

district court found it was necessary to appoint a guardian ad litem to represent the minor contingent beneficiaries.

Shortly thereafter, the parties reached a settlement agreement, which "settle[d] and resolve[d] all claims, demands, disputes and disagreements." On April 8, 2014, after a hearing, the district court issued a memorandum decision, approving the settlement agreement—which it found was "fair, reasonable, and in the best interest of [the] Trusts, trust beneficiaries and family as a whole." As a result, the district court dismissed the case with prejudice.

In its journal entry of dismissal, the district court ordered that "if any guardian ad litem wishe[d] to submit an application for allowance of fees it must be submitted within 20 days of the date of th[e] order." Gill timely moved for approval and payment of attorney fees and expenses in the amount of $7,275.38. Bowen filed a similar motion seeking approval and payment of $6,831. In response, the Joseph A. Bulger Living Trust and interested parties, Jo Ann, Judith, and Thomas (objecting parties) opposed the motion.

With regard to Bowen, the objecting parties argued that her motion should be denied because her appointment was made without notice and an opportunity to be heard, and that N.B. and any potential unborn issue "were not '[q]ualified beneficiar[ies],'" so their interests could have been adequately represented by "others having substantially the same interest." The objecting parties further argued that Bowen's billing statement showed the work performed as the basis for the requested fee was not necessary and did not benefit the minor or the trust.

As to Gill, the objecting parties argued that the appointment of a guardian ad litem for Joseph and Hazel was neither necessary nor authorized. Moreover, similar to Bowen,

6

the objecting parties contended that Gill incurred expenses which were unreasonable and his billing statement showed that the basis for the fee was not necessary and did not benefit Joseph, Hazel, or the Trust.

On May 8, 2015, the district court held a hearing, to consider the motions of the guardians ad litem. At the hearing, Gill and Bowen both contended that the only issue properly before the court was the determination of the appropriate fee to which they were entitled, because the propriety of their appointment had already been determined and they had rendered services in the case to the best of their ability. Similarly, James contended that the propriety of the district court's decision to appoint the guardians ad litem had already been decided and the ruling was the settled law of the case.

The objecting parties' counsel indicated that they had merely raised the issue of the propriety of the appointment of the guardians ad litem to preserve the issue for appeal:

> "And from the standpoint of, yes, we're challenging what the Court did with regards to Mr. Gill. Why are we challenging it now? Are we asking you to overrule the prior Judges? No. We need to do it at this time to keep our issues alive for the purpose of appeal. If we don't raise this issue it would be argued that it's lost.
> "We would submit your ruling isn't necessarily asking you to say, no, they shouldn't have been appointed so they're not going to get paid, it's the let's examine why they were appointed, let's examine the arguments of the people that object to it, and let's tie that into the question who did their appointment benefit as it relates to who should pay, and that's what we tie that into."

Ultimately, the district court granted the motions of the guardians ad litem, finding that the fees and expenses Bowen and Gill incurred during the litigation were reasonable and necessary. Additionally, the district court ordered the fees to be paid from the trust. The district judge explained:

7

"As a preliminary matter, I found and find that the hourly rates at which their services were billed were reasonable and within the—I don't know if I want to say market rates or whatever the prevailing standards within Wichita and Sedgwick County are for Guardian ad Litem services.

"I'd also note that it appeared to the Court that—I didn't re-tally all of the hours, but it appeared that both Guardian ad Litems [*sic*] spent approximately the same amount of time, in the neighborhood of 25 hours, one a little bit more, one a little bit less, performing services on this case. And based on the apparent complexity and longer nature of the case before it reached final resolution, I think that the amount of time they spent was probably fairly close to the minimum amount of time they could have spent on it and still met all their due diligence.

. . . .

". . . And maybe—maybe it would have been easier just to grant a standing objection to the appointments of the [guardians ad litem] for the sake of preserving that for appeal, but, regardless, having heard and reviewed the filings on the attorneys' fees I've made those findings."

On June 8, 2015, the objecting parties filed a notice of appeal from "all orders of the Court regarding the appointment of guardians *ad litem* and the trusts [*sic*] obligation to pay their fees as well as any and all other adverse rulings." Shortly thereafter, our court issued an order directing the parties to show cause why the appeal should not be dismissed for lack of jurisdiction because the notice of appeal was not timely filed. The parties complied with our request and also briefed the issue of jurisdiction.

JURISDICTION

The first question presented by this appeal is whether our court has jurisdiction to consider it. The right to appeal is purely statutory, and it is not a right contained within the United States or Kansas Constitutions; therefore, subject to certain exceptions, Kansas appellate courts have "jurisdiction to entertain an appeal only if the appeal is taken within the time limitations and in the manner prescribed by the applicable statutes.

8

[Citation omitted.]" *In re T.S.W.*, 294 Kan. 423, 432, 276 P.3d 133 (2012). As a result, if the record shows that the appellate court does not have jurisdiction, the appeal must be dismissed. *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 609, 244 P.3d 642 (2010).

Appeals may be taken to the Court of Appeals, as a matter of right, from "[a] *final decision* in any action, except in an action where a direct appeal to the supreme court is required by law[.]" (Emphasis added.) K.S.A. 2016 Supp. 60-2102(a)(4). As our Supreme Court explained in *Kaelter v. Sokol*, 301 Kan. 247, 249-50, 340 P.3d 1210 (2015):

> "A 'final decision' generally disposes of the entire merits of a case and leaves no further questions or possibilities for future directions or actions by the lower court. The term 'final decision' is self-defining and refers to an order that definitely terminates a right or liability involved in an action or that grants or refuses a remedy as a terminal act in the case. [Citation omitted.]"

In civil actions, parties must file a notice of appeal within 30 days from the entry of judgment. K.S.A. 2016 Supp. 60-2103(a). However, a timely posttrial motion (*i.e.*, filed within 28 days of entry of judgment) stops the appeal time from running. *Bank of America v. Inda*, 48 Kan. App. 2d 658, 662, 303 P.3d 696 (2013). The time starts running again in its entirety on the date of entry of the order ruling upon the posttrial motion. K.S.A. 2016 Supp. 60-2103(a). To extend the time for appeal, these motions must be in writing. *L.P.P. Mortgage, Ltd. v. Hayse*, 32 Kan. App. 2d 579, 584, 87 P.3d 976 (2004); *Thomas v. Davis-Moore Datsun, Inc*., 11 Kan. App. 2d 622, 623-24, 731 P.2d 1283 (1987).

In the present case, it is uncontroverted that the opposing parties filed their notice of appeal within 30 days of the district court's May 8, 2015, orders granting the motions of the guardians ad litem for attorney fees. But the opposing parties did not file a timely

9

notice of appeal from the journal entry approving the settlement agreement and dismissing the case with prejudice which was entered on April 8, 2014.

In their briefing, appellants focus on the legality of the district court's ruling appointing the guardians ad litem, rather than the amount of fees to which each guardian ad litem was entitled. In particular, appellants claim the district court's orders appointing the guardians ad litem were "erroneous," and the orders directing that their fees should be paid by the trust were also "erroneous." Given appellants' claims, we only have jurisdiction if the district court's orders granting the motions for attorney fees are the court's final decision in this matter. Whether jurisdiction exists is a question of law over which our scope of review is unlimited. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015).

Appellants contend the journal entry approving the settlement agreement and dismissing the case with prejudice was not a final decision because "[i]t did not settle any issue regarding the appointment or payment of either guardian *ad litem.*" In support of this assertion, appellants point to the language of the journal entry that states: "'[*i*]*f* any guardian *ad litem* wishes to submit an application for allowance of fees.'" (Emphasis added.) Appellants explain:

> "The Journal Entry [Approving Settlement] set out a time limit 'if any guardian ad litem wishes to submit an application for allowance of fees.' [Citation omitted.] Both before and after the filing of the Journal Entry it was unknown whether: 1) James R. Bulger had arranged to pay the fees of the guardian he had selected to be appointed; 2) the guardian *ad litem* was going to make a request for fees; 3) who he was going to request pay the fees; and, 4) if fees were ordered, who was the court going to order to pay the fees? Only one of the four questions was answered upon filing of a motion requesting fees by the guardian *ad litem*. The motion made it clear that he was requesting the payment of fees . . . . This left for later determination, at the time of hearing and argument on the motion, whether the Appellee would ask for the fees to be paid by a

10

party (one of the four children), a non-party (one of the trusts) or some other person or entity. No issue regarding the appointment was final and the right to appeal did not arise until the fee issue, what amount was to be paid, and by whom, was determined after the hearing. . . .

". . . In this case the Appellants could not articulate an interest that was aggrieved or prejudiced until the fee matter was final and the trust was ordered to pay the Appellee/guardian's fees. Additionally, the Appellants could not claim their interest was immediate and pecuniary until the matter was final and the trust was ordered to pay Appellee/guardian's fees."

The language of the settlement agreement, however, refutes appellants' claims. First, the settlement document broadly memorializes that the parties' agreement "*settle*[*d*] *and resolve*[*d*] *all claims, demands, disputes and disagreements*." (Emphasis added.) Second, the document's plain language disposes of any outstanding issues pertaining to the *appointment* of the guardians ad litem because it specifically authorizes the district court to order one of the trusts to pay fees related to the services rendered by the guardians ad litem. In particular, the terms of the settlement agreement provided: "The fee of the mediator . . . will be payable from the assets of [Joseph]'s Trust or Hazel's Trust. *Such fees as may be allowed to the guardians ad litem, or either of them, may be paid from the assets of* [*Joseph*]'*s Trust or Hazel's Trust if ordered by the Court*." (Emphasis added.)

Moreover, this understanding of the settlement agreement's terms is reflected in the district court's journal entry of dismissal, which simply directed the guardians ad litem "to submit an application for allowance of fees" within 20 days of the date of the order. In short, despite appellants' assertion to the contrary, under the settlement agreement's terms and the district court's order of dismissal, the only issue that remained outstanding at the time the case was dismissed with prejudice was the *amount* of fees to which each guardian ad litem was entitled and which trust would pay them.

11

In their briefing, the appellees argue that, apart from the plain language of the settlement agreement, under Kansas law an unresolved motion for attorney fees and costs does not alter the finality of a judgment or toll the time for appeal.

In *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 374, 789 P.2d 211 (1990), State Farm appealed an unfavorable jury verdict within 30 days of the entry of judgment but prior to the resolution of an outstanding motion for attorney fees. A panel of our court dismissed State Farm's appeal on jurisdictional grounds because "the amount of attorney fees to be awarded had not yet been determined when the notice of appeal was filed" and State Farm did not file a notice of appeal after the district court ruled on the attorney fees issue. 246 Kan. at 372-73.

Our Supreme Court reversed, holding that a "decision on the merits is final for purposes of appeal even if a request or motion for attorney fees attributable to the case has not yet been determined." 246 Kan. at 374. Our Supreme Court supported its decision by considering federal law as interpreted by the United States Supreme Court. Because of the similarity between K.S.A. 1989 Supp. 60-2102, which allowed a party to invoke appellate jurisdiction as a matter of right from "'[a] *final decision* in any action,'" and its federal counterpart, 28 U.S.C. § 1291, which "employ[s] the same critical term 'final decision' as the basis for appellate jurisdiction," the Kansas Supreme Court opted to adopt the rationale of *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 108 S. Ct. 1717, 100 L. Ed. 2d 178 (1988). *Snodgrass*, 246 Kan. at 374-76.

The petitioner in *Budinich* did not file a timely notice of appeal from the judgment memorializing the jury's award. Instead, the petitioner waited until after the district court issued its final order relating to attorney fees which, pursuant to Colorado law, petitioner was entitled to receive as part of the costs of the action. After recognizing that "attorney fees could be distinguished between those requested pursuant to statutes, which may

12

cause them to be part of the merits relief, and those specifying that they are to be taxed and collected as costs," the United States Supreme Court held:

> "'The time of appealability, having jurisdictional consequences, should above all be clear. We are not inclined to adopt a disposition that requires the merits or nonmerits status of each attorney's fee provision to be clearly established before the time to appeal can be clearly known. Courts and litigants are best served by the bright-line rule, which accords with traditional understanding, that a decision on the merits is a "final decision" for the purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case.' [Citation omitted.]" 246 Kan. at 375-76.

Accordingly, the United States Supreme Court dismissed the petitioner's appeal because the judgment on the merits was final and appealable when it was entered, which resulted in an untimely notice of appeal filed after the district court entered its order relating to the award of attorney fees.

The Kansas Supreme Court concluded that it was appropriate to adopt the *Budinich* rule in Kansas because a K.S.A. 40-256 motion or request for attorney fees in a petition is not "part of the merits of the underlying action"; instead, our legislature has traditionally viewed attorney fees as part of the costs awarded to the prevailing party rather than part of the compensation for the plaintiff's injury. 246 Kan. at 373-74. Our Supreme Court explained:

> "In *Budinich*, the Court reasoned that, at common law, attorney fees were regarded as an element of costs, which are not treated as part of the merits judgment. 486 U.S. at 200.
>
> "Fed. R. Civ. Proc. 58 states that the 'entry of the judgment shall not be delayed for the taxing of costs.' The comparable Kansas provision, K.S.A. 60-258, has omitted that statement from its adoption in 1963 to the present. Instead, Kansas provides a separate article on costs. K.S.A. 60-2001 *et seq*. Pursuant to K.S.A. 60-2001(d), 'other fees and expenses' to be assessed as court costs, in addition to the docket fee, are to be

approved by the court unless specifically fixed by statute. These other fees 'shall include, but not be limited to, witness fees, . . . attorneys' fees, . . . and any other fees and expenses required by statute.' The subsection further provides: 'All additional court costs shall be taxed and billed against the parties as directed by the court.'

"Under the provisions of K.S.A. 60-2002(a), costs 'shall be allowed to the party in whose favor judgment is rendered' unless a statute provides otherwise. The clerk of the court taxes the costs, subject to review by the judge on timely motion by an interested party. K.S.A. 60-2002(c). Among those items listed under the section titled 'Items allowable as costs' are '[s]uch other charges as are by statute authorized to be taxed as costs.' K.S.A. 60-2003(6). Commenting upon this section, Judge Gard states:

'This section needs no explanation. The taxing as costs of most of the items listed here would follow as a matter of course under the authorization of other statutes. But it is helpful to have the taxable items gathered together in one place, subject, however, to reference to other statutes for authority to tax as costs such things as appraisers' and attorneys' fees, costs on appeal, and the like.' Comments, 2 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-2003 (1979).

"K.S.A. 60-2002 and 60-2003 indicate the intent of the legislature to award attorney fees as costs in the action. Although the legislature could explicitly require a trial court to decide the issue of attorney fees as part of the merits of the case, the statutes now treat attorney fees as an element of costs to be awarded to the prevailing party. The legislature has characterized an award of attorney fees as something separate from the merits of the underlying case.

"We find the reasoning of *Budinich* persuasive. We believe a bright-line rule that a decision on the merits is a final judgment for appeal purposes despite any remaining question as to attorney fees is necessary and appropriate.

"We are aware that the rule we have adopted may lead to an occasional 'piecemeal' appeal of a judgment on the merits and an award of attorneys fees. The problem of the 'piecemeal' appeal may be avoided if trial judges delay entering judgment on the merits until the fee question is resolved and dispose of both the merits and the attorney fees in a single judgment. The better practice will be to resolve all fee questions in a timely fashion. This will allow an appeal to proceed more expeditiously. We conclude, however, that a decision on the merits is a 'final decision' for purposes of appeal whether or not a request or motion for attorney fees attributable to the case remains to be adjudicated. A question of whether to award attorney fees under Kansas

14

statutes is to be regarded as the assignment of costs rather than the termination of a right or liability or grant or refusal of a remedy." (Emphasis added.) *Snodgrass*, 246 Kan. at 376-78.

*Snodgrass* is valuable precedent that an outstanding motion seeking attorney fees and costs does not affect the finality of a judgment and therefore does not toll the statutory time period for appeal.

Our court has previously applied *Snodgrass* to resolve an analogous jurisdictional issue. In *In re of Guardianship & Conservatorship of Miller*, No. 89,291, 2003 WL 22902640, at *8 (Kan. App. 2003) (unpublished opinion), our court ruled:

"In this case, the district court's order denying Marian's request for spousal support was made in a journal entry filed on September 13, 2002. The appearance docket shows that no motions to reconsider were filed. The only other motion filed thereafter was the fiduciaries' motion for approval of attorney fees. However, a request for attorney fees does not toll the time to appeal. See *Moritz Implement Co. v. Matthews*, 265 Kan. 179, 189-90, 959 P.2d 886 (1998); *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 789 P.2d 211 (1990). Marian did not file her notice of appeal until October 29, 2002, 47 days after the journal entry rejecting her claim for spousal support.

"Marian's notice of appeal from the order should have been filed by October 16, 2003 (with the 3-day mail rule of K.S.A. 2002 Supp. 60-206). It was not timely filed, and we do not have jurisdiction to consider this claim of error."

Appellants attempt to distinguish *Snodgrass* by claiming the attorney fees at issue here were not "taxable as 'costs' [because] the Journal Entry Approving Settlement did not address 'costs' or reserve any issue regarding the taxing of 'costs'" and the guardians ad litem did not request the assessment of their fees as "'costs.'" Appellants also maintain they had no reason to appeal prior to the entry of the orders approving the motions for attorney fees because, until that time, "no party or non-party knew whether 'an

15

application for allowance of fees' would be made, who the Appellee/guardian *ad litem* would request be ordered to pay the fees, or who would be aggrieved or prejudiced thereby."

Once again, the settlement agreement contradicts appellants' argument, as it plainly expresses the parties' intent to allow the district court to tax the fees of the mediator and guardians ad litem as costs against one of the trusts.

Importantly, as in *Snodgrass*, in this case the district court had the authority to tax the fees of the guardians ad litem as costs because the Kansas Uniform Trust Code provides for the assessment of attorney fees as costs. In particular, K.S.A. 58a-1004, provides: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, *including reasonable attorney fees*, to any party, *to be paid* by another party *or from the trust* that is the subject of the controversy." (Emphasis added.)

The Kansas Uniform Trust Code treats attorney fees, such as those incurred by a guardian ad litem, as an element of costs, rather than part of the merits judgment. See *Shelter Mut. Ins. Co. v. Williams*, 248 Kan. 17, 30, 804 P.2d 1374 (1991) ("Although, generally, attorney fees are not recoverable absent clear and specific authority, [citation omitted], the drafters of the civil code and the legislature assumed that the court had inherent authority to compensate those who were called to assist it. [Citation omitted.] The Court of Appeals correctly concluded that the duty of a court to appoint a guardian ad litem necessarily implies an obligation to pay and the power of the court to fix reasonable compensation."); *In re Estate of Showers*, 207 Kan. 268, 275, 485 P.2d 299 (1971) (district court did not err in taxing a guardian ad litem's fees as costs of the action under the authority of K.S.A. 59-1717 of the Probate Code, which provides:  "Every fiduciary shall be allowed his necessary expenses incurred in the execution of his trust,

16

and shall have such compensation for his services and those of his attorneys as shall be just and reasonable. At any time during administration the fiduciary may apply to the court for an allowance upon his compensation and upon attorneys' fees.'").

In summary, we do not have jurisdiction to entertain appellants' arguments that the district court's rulings appointing Bowen and Gill, and the order for one trust to pay the fees associated with the appointments, were erroneous. This is because the appellants did not file their notice of appeal within 30 days of the final decision in this case, which was the district court's filing of the journal entry approving the settlement agreement and dismissing the case with prejudice.

Finally, appellants urge us to apply the unique circumstances doctrine to prevent their appeal from being dismissed. We decline this request, however, because although appellate courts previously recognized the unique circumstances doctrine, which allowed for an untimely appeal in certain situations, our Supreme Court recently determined that use of this doctrine to exercise jurisdiction over an untimely appeal is illegitimate because appellate courts have no authority to create equitable exceptions to jurisdictional requirements. See *Board of Sedgwick County Comm'rs v. City of Park City*, 293 Kan. 107, 120, 260 P.3d 387 (2011) (citing *Bowles v. Russell*, 551 U.S. 205, 127 S. Ct. 2360, 168 L. Ed. 2d 96 [2007]); *Anderson Office Supply v. Advanced Medical Assocs.*, 47 Kan. App. 2d 140, 145, 273 P.3d 786 (2012).

AMOUNT OF GUARDIAN AD LITEM FEES AWARDED

Appellants timely appealed the district court's ruling that the amount of the guardian ad litem fees was appropriate. Where the district court has authority to grant attorney fees, its decision is reviewed under the abuse of discretion standard. *Wiles v. American Family Assurance Co.*, 302 Kan. 66, 81, 350 P.3d 1071 (2015).

17

At the outset, the appellants incorporate by reference their prior arguments that the appointment of the guardians ad litem was "improper and unnecessary," and because neither trust benefitted from the appointments, no attorney fees should be paid from the trusts. These matters focus on appellants' belief that the guardians ad litem were not entitled to *any* fees because they never should have been appointed in the first place, an issue that was finally decided when the district court approved the settlement agreement and filed the journal entry of dismissal. Similarly, the propriety of charging one of the trusts with the payment of these fees was finally decided by the district court's approval of the settlement agreement which authorized the court to pay the guardians ad litem "from the assets of [Joseph]'s Trust or Hazel's Trust" and then dismissed the case. As discussed earlier, with regard to both arguments, appellants failed to timely appeal.

With regard to the amount of fees awarded, appellants do not complain of the hourly rate charged. They do not identify the particular legal work, time spent, or individual fee charged that they assert was improperly awarded. Rather, the appellants first complain of work that was not performed by the guardians ad litem. Second, they broadly complain of fees related to "the guardian conferring with one side of the dispute a disproportionate amount of time," one guardian conferring with the other guardian, one guardian "assisting one side related to mediation" and legal work necessary "to justify appointment."

As a general rule, a point raised incidentally in a brief and not argued therein is deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013). We question whether appellants' cursory briefing on this issue is sufficient to permit our review. Nevertheless, we are persuaded that appellants' broad and indefinite complaints are insufficient to prove an abuse of discretion by the district court. Moreover, we have independently reviewed the motions submitted by the guardians ad litem and reviewed the transcript of the hearing on this matter and the district court's

18

ruling which is set forth in the Factual and Procedural Background section of this opinion. We find no error.

## APPELLATE ATTORNEY FEES

Subsequent to the briefing and oral argument in this case, appellants and the appellee guardians ad litem moved our court for an order assessing attorney fees and costs for the preparation of appellate briefs and oral arguments. Appellants opposed the motions filed by the appellees.

Supreme Court Rule 7.07(b)(1) (2017 Kan. S. Ct. R. 51) of our rules of appellate practice provides that "[a]n appellate court may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." As noted earlier, K.S.A. 58a-1004 provides that "[i]n a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy."

Given our ruling that appellants did not have jurisdiction to pursue the primary appellate issues they raised, we decline to award them appellate attorney fees or costs. On the other hand, given our holding in favor of guardian ad litem Bowen, we find that Joan M. Bowen and Conlee, Schmidt and Emerson, LLP, shall be awarded attorney fees in the amount of $13,650.

With regard to the request made by Hugh W. Gill, we award him and the Hinkle Law Firm, LLC, attorney fees in the amount of $5,000. This amount is less than Gill requested. However, although Gill provided an affidavit in support of his request which included several factors listed in Rule 7.07(b)(2), he did not itemize his legal work as generally required by custom and usage. Still, we note that McMaster spent 53 hours on

his initial brief, that Bowen spent 54.6 total hours (most of which was related to her brief), and that Gill states that he and his firm spent 58 hours in appellate work, which indicates that Gill's request is generally consistent with the amount of time spent by the other attorneys involved in this litigation. For these reasons, despite the lack of itemization and the appellants' objection, we award Gill a reduced amount of attorney fees to compensate him for his appellate legal services.

Following the parties' submission of motions for payment of appellate attorney fees, Bowen filed a notice of the death of settlor Joseph A. Bulger on October 8, 2016. Of note, Hazel Bulger predeceased her husband, Joseph. In her filing, Bowen expressed concern that

> "the assets of one or more of the trusts that are at issue in this appeal may have been distributed or will [be distributed,] before the Court rules on the Rule 7.07 Motions[,] . . . by the Appellants who constitute a majority of trustees of the trust; three of the Appellants in their individual capacities are also beneficiaries of the trust."

The appellants did not respond to this filing.

We affirm the judgment of the district court awarding the guardians ad litem attorney fees to be paid from the Joseph A. Bulger Trust. We grant judgment for the guardians ad litem for appellate attorney fees to be paid from the Joseph A. Bulger Trust. The case is remanded to the district court with directions that, in the event the trust funds already have been disbursed, the district court shall enforce the judgments jointly and severally against any party or parties shown to have received funds from the trust.

Affirmed in part, dismissed in part, and remanded with directions.

20